*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0364P (6th Cir.)
File Name: 01a0364p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JAMES H. HINKLE,
     *Petitioner-Appellee/*
     *Cross-Appellant,*

    Nos. 00-3506/3889

     *v.*

MICHAEL RANDLE, Warden,
     *Respondent-Appellant/*
     *Cross-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 99-00035—Algenon L. Marbley, District Judge.

Argued: June 7, 2001

Decided and Filed: October 11, 2001

Before: KEITH, BATCHELDER, and MOORE, Circuit
Judges.

———————————

**COUNSEL**

**ARGUED:** M. Scott Criss, OFFICE OF THE ATTORNEY
GENERAL, CORRECTIONS LITIGATION SECTION,
Columbus, Ohio, for Appellant. John Fenlon, PUBLIC
DEFENDER'S OFFICE, OHIO PUBLIC DEFENDER

COMMISSION, Columbus, Ohio, for Appellee. **ON BRIEF:** M. Scott Criss, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellant.   John Fenlon, PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC DEFENDER COMMISSION, Columbus, Ohio, for Appellee.

---

## OPINION

---

ALICE M. BATCHELDER, Circuit Judge.  Pursuant to 28 U.S.C. § 2254, Petitioner filed an application for a writ of habeas corpus on the grounds that the prosecutor committed misconduct during closing arguments to the jury and that his counsel's performance was constitutionally ineffective because he failed to object during the prosecutor's closing argument.  Finding merit to the prosecutorial misconduct claim, the district court granted the writ on the condition that the State of Ohio re-try Petitioner within ninety days. Respondent timely filed a notice of appeal and filed a motion for a stay of the judgment pending appeal, which the district court granted.  Petitioner has appealed the stay and the district court's decision to deny him release pending the outcome of this appeal.  For the reasons that follow, we will reverse the district court's judgment conditionally issuing the writ. Accordingly, we have no occasion to consider Petitioner's cross-appeal.

### I.  Factual and Procedural Background

On direct appeal the Ohio Court of Appeals provided the following factual background regarding the indictment and trial of Petitioner James Hinkle:

On April 10, 1991, the Perry County Grand Jury indicted appellant, James Hinkle, on three counts of rape in violation of R.C. 2907.02(A)(1)(b).  Said charges arose from allegations that appellant had sexual intercourse with his then-ten-year-old niece, Amanda Patterson.

rejected his claim of ineffective assistance of counsel under the standard of *Strickland* as distilled by the Ohio Supreme Court in *Bradley*. For the same reasons that Petitioner cannot show cause and prejudice to overcome the procedural bar precluding federal habeas review of his prosecutorial misconduct claim, we cannot say that the Ohio Court of Appeals reached a decision that was contrary to clearly established federal law as stated by the Supreme Court in *Strickland*. Nor can we conclude that the state court's application of the *Bradley/Strickland* standard was objectively unreasonable. Therefore, under section 2254(d) we cannot issue a writ.

**Conclusion**

For the foregoing reasons, we reverse the judgment of the district court. Because we conclude that Petitioner is not entitled the issuance of a writ of habeas corpus, we have no occasion to consider the contentions raised in his cross-appeal that the district court erred by denying him release pending appeal.

Amanda had become pregnant and had named appellant as the father. Amanda received an abortion and the fetal tissue was preserved for analysis.

A jury trial commenced on April 13, 1992. Appellee, the State of Ohio, presented the testimony of various individuals including Amanda's doctors, Hall Canter, M.D. and Mervyn Samuel, M.D., two molecular biologists from Cellmark Diagnostics, Robin Cotton, Ph.D. and Paula Yates, and Amanda herself. Appellant presented the testimony of his father and himself. The jury found appellant guilty as to one count of rape but hung as to the other two counts.

On May 18, 1992, the trial court sentenced appellant to an indeterminate term of ten to twenty-five years.

*State v. Hinkle*, No. CA-96-46, at 2 (Ohio Ct. App. Sept. 17, 1997) (unpublished). At trial Dr. Cotton testified, based on a comparison of DNA samples from the aborted child and Hinkle, that she was satisfied "to a reasonable scientific certainty" that Hinkle had fathered Amanda Patterson's child. The record also reflects that the jury returned a guilty verdict against Hinkle on the one count in support of which the prosecution had introduced the DNA evidence.

*A.  Closing Arguments*

Petitioner's claim of prosecutorial misconduct arises from statements concerning the accuracy and reliability of DNA evidence made by the prosecutor during rebuttal. Defense counsel began his closing argument with an attack on the DNA evidence introduced by the State. He charged that the science, then still in its infancy, amounted to little more than "guesswork" based upon "arbitrary rules" and an unscientific

methodology that precluded an accurate determination of whether Hinkle fathered Patterson's child.[1]

---

[1] In relevant part, Hinkle's counsel delivered the following argument to the jury:

> I also mentioned on opening statement that the—there would be DNA testing or had been and there would be people here testifying to it and that you would find that the testing that they did was, as I think I put it, inconclusive. And I believe that's exactly what the evidence we heard in regard to the DNA gives, and that is inconclusive. And I say that for several reasons.
>
> First of all, I am sure that all of you have heard the propaganda, the news release, the deification of DNA fingerprinting, they call it, and how its so precise and so scientific and that you, each of you, have DNA like nobody else in the whole world. And that's probably true. They say it is and I have no real reason to doubt that. The potential is there for science to identify each of us individually against anybody else in the world by DNA.
>
> But, ladies and gentlemen, DNA testing for purposes of identification of an individual just came into being in 1987. It is just in its infancy. The technology that they use they have developed since 1987. And although it does an incredible job of separating out DNA and identifying it, apparently there's a long ways to go before they are able to say that this is exactly, scientifically, the end result of this test, and they surely cannot do that in this case. They could not do it. And eventually technology will develop. I am confident they will be a lot more able to be a lot more certain about things than they are today.
>
> * * *
>
> However, the experts, of course, would not hear that, because their intention and their opinion is going to be that James Hinkle is the father. That's why we're here. So, instead of saying it's a—it's a trait, a gene trait that has to come from the father and didn't come, they said, well, that might be a mutation. We know that mutations happen, so it's—we don't count that.
>
> Well, now, that's not scientific. It's just them saying, "I don't know whether it's a gene trait or I don't know whether—and I don't know whether it's a mutation, therefore we will disregard it." Every—thinking of this, every band that didn't match the father—or the alleged father, they—they could always say that;

---

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's legal determination is "contrary to" clearly established federal law under section 2254(d)(1) only "if the court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable application" of federal law occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Under this standard, a state adjudication is not unreasonable "simply because [the federal] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the Supreme Court has directed that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. An objectively unreasonable application of federal law differs from an incorrect one. *Id.* at 410-12.

Section 2254(d)(1) strictly limits the source of "clearly established Federal law" to the holdings, as opposed to dicta, of the Supreme Court's decisions. *Id.* at 412. Accordingly, we "no longer can look to lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law." *Herbert*, 160 F.3d at 1135.

Because Hinkle could not show prejudice from the prosecutor's rebuttal argument, the state appellate court

"accurate" was error, but that the error was harmless. We agree that any error was harmless. While the prosecutor's remarks had the effect of bolstering the reliability of DNA evidence in general, they came in response to defense counsel's invitation to comment on the state of the accuracy and reliability of DNA evidence. In short, Petitioner cannot show, to a degree sufficient to undermine confidence in the outcome of his trial, that the failure of his trial counsel to object to the prosecutor's rebuttal argument would have led to a different result.

Since Petitioner cannot meet the *Strickland* standard, he cannot show cause or prejudice to excuse the procedural bar precluding federal habeas review of his claim of prosecutorial misconduct. Moreover, Petitioner's case does not fall within the narrow class of cases to which the "fundamental miscarriage of justice exception" applies. *See Calderon v. Thompson*, 523 U.S. 538, 559 (1998). Therefore, Petitioner is not entitled to relief on this ground.

### III.  Ineffective Assistance of Counsel

Because the Ohio Court of Appeals considered the merits of Petitioner's claim of ineffective assistance of counsel, he has preserved that claim for review in a federal habeas court. Petitioner filed his application for a writ of habeas corpus on January 15, 1999, after the AEDPA's effective date of April 24, 1996. Therefore, the AEDPA governs this case. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Baker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). We review a district court's decision in a habeas proceeding de novo. *Staley v. Jones*, 239 F.3d 769, 775 (6th Cir. 2001).

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

couldn't they? It's a mutation. And that's what they did here. And if it's so doggone scientific, then shouldn't they know? You see, my point is, it is not that scientific so far as their technique is concerned.

* * *

What I'm saying is, folks, that they have their arbitrary rules, not scientific rules. We got into this little questioning about that one single-probe autorad where they didn't line up. They were close, they were—there's a band there for the tissue, the mother didn't contribute it, and the father's was like this—I mean, Jim's was. It didn't match, but she said, "That's okay, because we allow a certain leeway."

Matching is the name of the game. If they match, then they say that gene, that trait, that bit of DNA in the tissue came from the father. If it don't match, it didn't come from the father.

But, if it's close, we call it a match. We make these little windows and we lay it over there and if      it comes within that window, then we say it's a match. And other laboratories do the same thing. They would come in here and testify that they, just like Dr. Cotton came in and testified, use a different sized window.

Is that scientific? No. It is guesswork. It is an arbitrary determination by them as to what they are going to say. It is a match or it is not a match. And it's vitally important to a determination of the effectiveness and the accuracy of that test to know whether or not they match.

Those are just examples. There were many others. They make up these arbitrary rules. They kept saying, "Well, this is consistent with—". That's not very scientific language either. "Consistent with" doesn't mean the same as, doesn't mean that it's a fact. It just means that it could be. That's what consistent—it means you can't exclude it. May so, maybe not, but you can't exclude it.

* * *

They admitted—Dr. Cotton did, in response to my question, say, "I would like to see DNA tests from others." She was tacitly admitting that there was a doubt there, certainly; and she also

In rebuttal, the prosecutor responded to defense counsel's attack on the accuracy and reliability of DNA evidence by assuring the jury that Ohio courts have accepted the scientific validity of DNA testing and that the trial judge would not have admitted the evidence without such a foundation. Specifically, he gave the following rebuttal to defense counsel's argument about the reliability and accuracy of DNA evidence:

> Mr. Collins spent a great deal of time attacking the scientific reliability or accuracy of DNA testing and, as he said, in recent years it has reached a state of general acceptance, not only in this state, but in the United States as a whole. And I am sure Mr. Collins didn't intend to do so, but by attacking it and pooh-poohing its reliability, he may have even impinged upon the integrity of this Court, because of the things that Judge Lewis does as a judge, as does any other court in this state or any other state, is make certain, absolutely certain, that juries cannot ever hear opinions expressed by experts unless the basis for those opinions has, in fact, been firmly established as scientifically reliable and accurate.

---

admitted this is just an opinion. When they make the report they say that Jim could be, he's not excluded. He has genes that are consistent with him being the father. So does a whole lot of other Pattersons that have genes that would be consistent with being the father. Being consistent with doesn't make him the father.

They upgraded that when they testified here under Mr. Allen's questioning to say, yeah, I think he is, you know, in my opinion. Now, if this is so scientific, if they are so certain—and they are not, but if the propaganda that you have heard and they would like to have you believe is correct and accurate, why wouldn't they know that he was the father. They wouldn't have to have an opinion; would they? They would know. So, the tests are not that—are not that scientifically finite. DNA might be, but their testing surely is not, not at this stage of the game anyway.

---

668 (1984). Under *Strickland*, we must strongly presume that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. Accordingly, our inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance" viewed as of the time of counsel's conduct. *Id.* Even when counsel's performance is deficient under this standard, constitutionally ineffective assistance of counsel requires a showing of actual prejudice. *Id.* at 692. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In making this determination, we must consider "the totality of the evidence before the judge or jury." *Id.* at 695.

In this case, Petitioner cannot show prejudice under the *Strickland* standard to establish cause to excuse the procedural default. To show prejudice under *Strickland*, Petitioner must establish that but for the alleged error of his trial counsel in not objecting to the prosecutor's rebuttal argument, assuming that the prosecutor committed misconduct in making the challenged remarks to the jury, there is a reasonable probability that the result of the proceeding would have been different. Petitioner cannot meet this exacting standard. Here, defense counsel failed to lodge a contemporaneous objection to the prosecutor's characterization of the law regarding the admissibility of evidence that would have been before the jury irrespective of whether defense counsel had made that objection.[4] The state court held that the prosecutor's use of the terms "reliable" and

---

[4] It is well established in both Ohio and federal law, that the trial court must assess whether the reasoning or methodology underlying proposed scientific testimony is scientifically valid before allowing its introduction into evidence. *See Miller v. Bike Athletic Co.*, 80 Ohio St. 3d 607, 611 (1998), citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993).

(1982)). Moreover, we view a state appellate court's review for plain error as the enforcement of a procedural default. *See, e.g.*, *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) ("Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules.") (citing *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989)). In determining whether state courts have relied on a procedural rule to bar review of a claim, we look to the last reasoned opinion of the state courts and presume that later courts enforced the bar instead of rejecting the defaulted claim on its merits. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In this case, the Ohio Court of Appeals, which issued the last reasoned opinion reviewing Hinkle's claim of prosecutorial misconduct, expressly enforced Ohio's contemporaneous objection rule. The court declared at the outset, "Because no objections were made to these comments [made in the prosecutor's closing and rebuttal arguments], we must review this assignment of error under the plain error rule . . . ." Therefore, under the established law of this circuit, Petitioner has "waive[d] the right to federal habeas review unless the prisoner can demonstrate cause for noncompliance and actual prejudice arising from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), and *Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998)).

Petitioner has the burden of showing cause and prejudice to overcome a procedural default. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 754). "Attorney error that amounts to ineffective assistance of counsel can constitute 'cause' under the cause and prejudice test." *Id.* (citing *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996)). In *Murray v. Carrier*, 477 U.S. 478, 487 (1986), the Supreme Court held that attorney error is not cause for procedural default analysis unless the performance of petitioner's counsel was constitutionally ineffective under the standard established in *Strickland v. Washington*, 466 U.S.

DNA testing has been scientifically established as accurate and reliable in the courts of Ohio for some years, and I think you can have faith in this Court, that you would not have been permitted to hear any of that evidence unless that was the case.

I think you are all familiar, for instance, with the use of polygraphs or lie detector tests, but I—I would be surprised if any of you knew that, in fact, polygraphs are not admissible in Ohio because their reliability has never been scientifically established to the satisfaction of the courts. And yet, I think the public at large thinks those are commonplace; but the reverse is true.

You have to first establish a history of scientific reliability and accuracy before you can ever use those things in court. And Mr. Collins full well knows that that's the case, and he knows that there is an established history of scientific reliability and accuracy of DNA.

Defense counsel did not object to these remarks. The trial court instructed the jurors that the attorneys' closing arguments were not evidence that they could consider in their deliberations.

### B. Petitioner's Direct Appeal

On direct appeal to the Ohio Court of Appeals, Petitioner raised two assignments of error. First, he maintained that various actions of the prosecutor, including the rebuttal argument regarding the reliability of DNA testing, constituted misconduct that denied him a fair trial. Second, Hinkle argued that his counsel was constitutionally ineffective for failing to object to the prosecutor's remarks during rebuttal.[2]

---

[2] Petitioner raised a third assignment of error, contending that his conviction was against the manifest weight of the evidence. Hinkle did not assert this ground in his habeas petition.

Addressing the prosecutorial misconduct claim first, the appellate court held that it could review only for plain error under Ohio law because defense counsel had failed to lodge a contemporaneous objection to the prosecutor's argument in rebuttal. Under the plain error standard, the Ohio Court of Appeals analyzed each of Hinkle's claims of misconduct and concluded that, even where the prosecutor's comments constituted error, that error did not rise to the level of undue prejudice or meet the exacting standard necessary to excuse the failure of Hinkle's counsel to object to the prosecutor's rebuttal argument. Therefore, the Ohio Court of Appeals overruled this assignment of error.

With respect to the ineffective assistance of counsel claim, the Ohio Court of Appeals reviewed under the standard announced in *State v. Bradley*, 538 N.E.2d 373, 379-80 (Ohio 1989), the Ohio analog to *Strickland v. Washington*, 466 U.S. 668 (1984). Having found no prejudice to Hinkle from the prosecutor's statements, the court then applied the *Bradley/Strickland* standard and rejected Petitioner's ineffective assistance of counsel claim, insofar as it related to the failure to object to the prosecutor's closing argument, since he could not show prejudice.[3]

---

[3]Petitioner also based his ineffective assistance of counsel claim on his lawyer's failure to move for the admission of autoradiographs of the banding patterns from the DNA evidence. With respect to this portion of Hinkle's ineffective assistance of counsel claim, the Ohio Court of Appeals concluded that counsel's decision not to seek admission of this evidence resulted from a legitimate defense strategy. Specifically, rather than question whether DNA tests showed a match with his client, defense counsel pursued the theory that any one of a number of relatives of Amanda Patterson would also match. Although the jury requested this evidence during its deliberations, the appellate court reasoned that, consistent with the defense theory, counsel could reasonably not seek admission of the autoradiographs.

When Petitioner applied for a writ of habeas corpus in the district court, he did so on the grounds of prosecutorial misconduct and his counsel's failure to object to the prosecutor's rebuttal statements. His petition also asserts that his trial counsel was ineffective because he failed to move to admit the autoradiograph evidence. Nonetheless, his counsel

When the Ohio Court of Appeals denied Petitioner's motion for reconsideration, Hinkle petitioned the Ohio Supreme Court for review. In a brief order dated January 21, 1998, the Ohio Supreme Court denied leave to appeal and "dismisse[d] the appeal as not involving any substantial constitutional question."

### C. The District Court's Judgment

Pursuant to 28 U.S.C. § 2254, Petitioner filed an application for a writ of habeas corpus on January 15, 1999. Hinkle based his petition on the prosecutor's misconduct in closing arguments and ineffective assistance of counsel due to the failure to object to the prosecutor's statements in rebuttal. Considering the claim of prosecutorial misconduct first, the district court agreed that the prosecutor's remarks concerning the reliability and accuracy of DNA testing were inappropriate. Viewing the DNA evidence against Hinkle as critical in the trial in state court, the district court held that the prosecutor's rebuttal argument prejudiced Hinkle and conditionally issued the writ. Accordingly, the court declined to address the remainder of Petitioner's claims.

## II.  Prosecutorial Misconduct

We have held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice. *See, e.g.*, *Scott v. Mitchell*, 209 F.3d 854, 867-68 (6th Cir. 2000) (citing *Engle v. Isaac*, 456 U.S. 107, 124-29

---

in this habeas action attached no statement summarizing the factual background of the ineffective assistance of counsel claim to the extent it involves the performance of trial counsel with respect to the autoradiograph evidence. For this reason, the district court treated this part of Petitioner's ineffective assistance of council claim as waived.

We cannot discern from the record whether Petitioner presented the autoradiograph portion of the ineffective assistance of counsel argument to the district court. Even if he has, however, his counsel has abandoned the issue on appeal. We therefore decline to consider the matter further.