**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0381n.06

**Nos. 06-3835/06-3837**

| | | |
|---|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | | **FILED**<br>**May 29, 2009**<br>LEONARD GREEN, Clerk |

DONALD L. PALMER,  )
                           )
      Petitioner-Appellant,  )      ON APPEAL FROM THE
                           )      UNITED STATES DISTRICT
      v.                    )      C O U R T   F O R   T H E
                           )      SOUTHERN DISTRICT OF
MARGARET A. BAGLEY, Warden,  )      OHIO
                           )
      Respondent-Appellee.  )
                           )

BEFORE: DAUGHTREY, COLE, and GRIFFIN, Circuit Judges.

    GRIFFIN, Circuit Judge.

    Donald L. Palmer, an Ohio death-row prisoner, appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court granted a certificate of appealability ("COA") on two claims alleging erroneous jury instructions and three claims alleging prosecutorial misconduct. After careful consideration of the issues raised and for the reasons that follow, we affirm the district court's denial of relief.

I.

    In October 1989, an Ohio jury convicted Palmer of the May 1989 aggravated murders of Charles Sponhaltz and Steven Vargo, and he was thereafter sentenced to death. *State v. Palmer*, 687

N.E.2d 685, 694-95 (Ohio 1997).[1]  On direct appeal, the Ohio Court of Appeals and the Supreme Court of Ohio unanimously affirmed, and the United States Supreme Court denied certiorari.  *State v. Palmer*, No. 89-B-28, 1996 WL 495576, at *22 (Ohio Ct. App. Aug. 29, 1996) (unpublished), *aff'd*, 687 N.E.2d at 695, 713, *cert. denied*, 525 U.S. 837 (1998).  Ohio's courts subsequently denied Palmer's requests for post-conviction relief.  *State v. Palmer*, No. 96 BA 70, 1999 WL 979228 (Ohio Ct. App. Oct. 20, 1999) (unpublished), *appeal not allowed*, 723 N.E.2d 1113 (Ohio 2000); *State v. Palmer*, No. 89-B-28 (Ohio Ct. App. Oct. 25, 2000) (unpublished), *aff'd*, 749 N.E.2d 749 (Ohio 2001) (per curiam).

Palmer then filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Ohio, asserting eighteen errors.  The district court denied the petition, adopting the chief magistrate judge's report and recommendation ("R&R") in its entirety.  *Palmer v. Bagley*, No. 1:00-CV-882, 2005 WL 3965400 (S.D. Ohio Dec. 16, 2005) (unpublished), *adopted by*, 2006 WL 1027733 (S.D. Ohio Apr. 17, 2006) (unpublished).  Thereafter, the district court granted a certificate of appealability ("COA") on the following claims alleging erroneous jury instructions and prosecutorial misconduct:  (1) whether the trial court erred by refusing to instruct the jury on involuntary manslaughter, a lesser included offense of aggravated murder; (2) whether the trial court erroneously instructed the jury that it could convict Palmer of aggravated murder without specifically finding that he intended to kill; and (3) whether Palmer was denied a fair trial

---

[1]A detailed recitation of the evidence was articulated by the Supreme Court of Ohio in *Palmer*, 687 N.E.2d at 685-95.

because of alleged prosecutorial misconduct arising from the prosecutor's (a) misleading argument to the jury that the "prior calculation and design" necessary to convict him of aggravated murder could occur in ten to fifteen seconds and (b) introduction of evidence in the penalty phase that Palmer (i) failed to pay child support and (ii) sexually abused his children. *Palmer v. Bagley*, No. 1:00-CV-882, 2006 WL 3591963 (S.D. Ohio Dec. 11, 2006) (unpublished).

We denied Palmer's motions to expand the COA and to reconsider that determination.

II.

Because Palmer filed his federal habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), AEDPA governs our review. *Cornwell v. Bradshaw*, 559 F.3d 398, 404 (6th Cir. 2009). Under AEDPA, we are statutorily prohibited from granting Palmer habeas relief on any claim adjudicated on the merits by Ohio's courts unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1) & (2). *See Cornwell*, 559 F.3d at 404.

In assessing whether a state court decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, a federal court may look only to the holdings, not the dicta, of the Supreme Court's decisions. *Cornwell*, 559 F.3d at 404-05 (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Only if the state court's reasoning or ruling

- 3 -

contradicts those holdings is the decision "contrary to" clearly established Supreme Court precedent. *Cornwell*, 559 F.3d at 405 (citing *Early v. Packer*, 537 U.S. 3, 8 (2002)).

A state court decision "involves an unreasonable application of" Supreme Court precedent if it is "objectively unreasonable," not simply erroneous or incorrect. *Williams*, 529 U.S. at 409-11. Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). A federal court may grant relief under the "unreasonable application" clause of § 2254(d)(1) "if the state court decision (a) identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies it to the facts, or (b) either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context." *Cornwell*, 559 F.3d at 405 (citing *Williams*, 529 U.S. at 407-08)). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant the writ unless "thorough analysis by a federal court produces a firm conviction that that judgment is infected by constitutional error." *Williams*, 529 U.S. at 389.

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct" unless rebutted "by clear and convincing evidence." § 2254(e)(1).

When the petitioner properly raised a habeas claim in state court but the state court did not adjudicate the claim on its merits, the deference owed to the state courts under AEDPA does not

apply, and we review questions of law and mixed questions of law and fact de novo. *See Maples v. Cornwell*, 559 F.3d at 405*; Stegall*, 340 F.3d 433, 436 (6th Cir. 2003). Harmless errors are disregarded. *Calderon v. Coleman*, 525 U.S. 141, 145-47 (1998).

A.

Palmer devotes almost half of his appellate brief to advancing his argument that we should expand the COA to consider other alleged errors in the proceedings below. However, we have *twice* carefully considered and denied Palmer's request to expand the COA, first when we denied his motion to expand the COA, and second when we denied his subsequent petition to reconsider that determination. Accordingly, we do not now consider any issue for which a COA was not granted. *See Cooey v. Coyle*, 289 F.3d 882, 887 (6th Cir. 2002).

B.

Palmer contends that he was denied due process when, during the guilt phase of his trial, the state trial court refused to provide the jury with an instruction on involuntary manslaughter, a lesser included offense of aggravated murder. *See State v. Lynch*, 787 N.E.2d 1185, 1202 ¶ 79 (Ohio 2003) (citing *State v. Thomas*, 533 N.E.2d 286, 290 (Ohio 1988)). He argues that because there was "some evidence" that he lacked specific intent to kill the victims, the trial court should have provided the jury with the option of finding him guilty of involuntary manslaughter in lieu of aggravated murder. The Supreme Court of Ohio denied this claim on its merits, ruling that under any reasonable view of the evidence, Palmer intended to kill his victims. *Palmer*, 687 N.E.2d at 702-03. The district

court held that the Supreme Court of Ohio's decision was not an objectively unreasonable application of clearly established Supreme Court precedent.[2] *Palmer*, 2005 WL 3965400, at *34.

In urging reversal, Palmer relies upon the Supreme Court's decisions in *Beck v. Alabama*, 447 U.S. 625 (1980), and *Hopper v. Evans*, 456 U.S. 605 (1982). *Beck* held that "the jury must be permitted to consider a verdict of guilt of a noncapital offense 'in every case' in which 'the evidence would have supported such a verdict.'" *Hopper*, 456 U.S. at 610 (articulating *Beck*'s holding). The *Hopper* Court explained the rationale underlying *Beck*'s holding as follows:

> The *Beck* opinion considered the alternatives open to a jury which is [precluded by state law from convicting] a defendant of a lesser included offense when there was evidence which, if believed, could reasonably have led to a verdict of guilt of a lesser offense. In such a situation, we concluded, a jury might convict a defendant of a capital offense because it found that the defendant was guilty of a serious crime. Or a jury might acquit because it does not think the crime warrants death, even if it concludes that the defendant is guilty of a lesser offense. While in some cases a defendant might profit from the preclusion clause, we concluded that "in every case [it] [introduces] a level of uncertainty and unreliability into the factfinding process that cannot be tolerated in a capital case."

*Id.* at 610 (internal citations omitted). Placing *Beck* within the context of its prior decisions, the Court explained that "[o]ur holding in *Beck*, like our other Eighth Amendment decisions in the past

---

[2]The district court erroneously based its ruling on the "unreasonable application" clause of § 2254(d)(1). That clause applies to unreasonable applications of clearly established *federal* law, as determined by the Supreme Court of the United States. § 2254(d)(1). The Supreme Court of Ohio's analysis relied upon *Thomas*, a *state* court decision. Hence, it is the "contrary to" clause in § 2254(d)(1) that controls. *See Early*, 537 U.S. at 8 (holding that the state court need not cite or even be aware of the relevant United States Supreme Court cases, "so long as neither the reasoning nor the result . . . contradicts them").

decade, was concerned with insuring that sentencing discretion in capital cases is channelled so that arbitrary and capricious results are avoided." *Id*. at 611.

*Hopper* clarified that "due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction." *Id*. In other words, "[t]he federal rule is that a lesser included offense instruction should be given 'if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater." *Id*. at 612 (quoting *Keeble v. United States*, 412 U.S. 205, 208 (1973)). In *Hopper*, the Court determined that no lesser included offense instruction was required where the evidence not only supported the claim that the defendant intended to kill the victim, but affirmatively negated any claim that he did not intend to do so. *Hopper*, 456 U.S. at 613.

Palmer asserts that a jury could rationally have found that he did not intend to kill the victims, thereby entitling him to an involuntary manslaughter instruction, because at the time of the shootings, or immediately prior, he was under the influence of alcohol or LSD; the victims were strangers; Sponhaltz and Hill (Palmer's companion) were involved in an altercation over which he had no control; he thought he shot Hill rather than Sponhaltz; he did not remember pulling the trigger; he was in a state of "mass confusion"; Vargo, the second victim, "threw his arms up either to keep [Palmer] from running into [Vargo] or to grab Palmer" and "[i]n his state of confusion and with no time to think, his gun fired again"; he denied any intent to kill or rob the victims; there were no other witnesses with personal knowledge who testified about the shootings; and the evidence regarding his intent was circumstantial. Palmer's reliance on *Hopper* and *Beck* is misplaced.

Palmer fails to acknowledge the Supreme Court's later decision in *Schad v. Arizona*, 501 U.S. 624 (1991). *Schad* clarified that the central concern remedied by the holding in *Beck* was forcing the jury into the conundrum of an "all-or-nothing choice between the offense of conviction (capital murder) and innocence." *Id*. at 646-47. *See also Spaziano v. Florida*, 468 U.S. 447, 455 (1984) ("[T]he absence of a lesser included offense instruction [in a capital case] increases the risk that the jury will convict, not because it is persuaded that the defendant is guilty of capital murder, but simply to avoid setting the defendant free."). In *Schad*, the Court determined that this concern was not present because the jury was given a "third option" – second-degree murder. *Id*. at 647-48. The *Schad* Court also held that the trial court's second-degree murder instruction, in lieu of the defendant's requested robbery instruction, did not "diminish the reliability of the jury's capital murder verdict." *Id*. at 647. The Court explained that to accept the defendant's argument, it "would have to assume that a jury unconvinced that petitioner was guilty of either capital or second-degree murder, but loath to acquit him completely (because it was convinced he was guilty of robbery), might choose capital murder rather than second-degree murder as its means of keeping him off the streets." *Id*. at 647. The Court refused to "assume such irrationality." *Id*. Finally, although the *Schad* Court clarified that Beck would not "be satisfied by instructing the jury on just any lesser included offense, even one without any support in the evidence," it determined that the second-degree murder instruction was "adequate to indicate that the verdict of capital murder represented no impermissible choice" because "petitioner concede[d] that the evidence would have supported a second-degree murder conviction." *Id*. at 648.

Here, as in *Schad*, petitioner's due process rights were not violated because the trial court did not confine the jury to an all-or-nothing choice between capital murder and acquittal. Regarding each victim, the court gave the jury the additional options of convicting Palmer of murder, a lesser included offense of aggravated murder distinguishable by the absence of "prior calculation and design," *see* OHIO REV. CODE ANN. §§ 2903.02(A) (murder) & 2929.02(A)(B)(1) (penalties for aggravated murder and murder); *State v. Monroe*, 827 N.E.2d 285, 294-95 ¶ 36 (Ohio 2005); *State v. Tyler*, 553 N.E.2d 576, 591 (Ohio 1990) (per curiam), and aggravated robbery. Had the jury simply wanted to "keep Palmer off the streets," it could have accomplished that goal by convicting him of these other serious, but non-capital, crimes. That the jury convicted him of both aggravated murder (rather than murder) and aggravated robbery rendered its verdicts reliable and avoided the "arbitrary and capricious" results in capital cases against which the Supreme Court has cautioned.

Moreover, the Supreme Court of Ohio's reliance upon its decision in *Thomas* to support its ruling that Palmer was not entitled to an involuntary manslaughter instruction was not contrary to *Beck*, *Hopper*, or any other clearly established Supreme Court precedent. *Beck* and *Hopper*, like *Thomas*, would only require such an instruction if the evidence permitted the jury rationally to find Palmer guilty of involuntary manslaughter and acquit him of aggravated murder. Rejecting that possibility, the Supreme Court of Ohio explained:

> Here, under any reasonable view of the evidence, the killing of both Sponhaltz and Vargo was purposeful. Appellant fired two shots into the left side of Sponhaltz's head. He shot Vargo in the right side and in the left side of the head, with one of the shots having been fired from point-blank range.

At trial, appellant claimed that he did not know he was carrying the pistol until it accidentally discharged when appellant attempted to strike Sponhaltz with a hand or fist. Appellant also claimed that he killed Sponhaltz and Vargo in the "panic" and "mass confusion" that followed the first "accidental" shot. However, the placement of the shots fired into Sponhaltz's head, and the paths of the projectiles through Sponhaltz's brain, clearly show the absence of any accident or mistake. Moreover, the alleged accidental shot and appellant's alleged intoxication do not even begin to explain the second shot fired into Sponhaltz's head, which was fired with unmitigated accuracy. Appellant's claims of panic and confusion are thoroughly refuted by the location and placement of the shots fired into Sponhaltz's head, and the location and placement of the shots fired into the left and into the right side of Vargo's head. Both victims were killed execution-style with a single-action revolver. The evidence concerning the type of weapon used by appellant demonstrated that the hammer mechanism had to be pulled back and cocked, and the trigger then pulled, for each round fired. Appellant's claims of accident, panic, and confusion are wholly inconsistent with the evidence. Additionally, contrary to appellant's assertions, no reasonable juror could have believed that these killings were the accidental byproduct of an aggravated robbery gone wrong. The number and location of the victims' wounds would lead any reasonable trier of fact to conclude that appellant acted purposefully in causing the death of each victim.

We find that the evidence adduced at trial could not have reasonably supported both an acquittal on aggravated murder and a conviction on the charge of involuntary manslaughter. Therefore, the trial court correctly rejected appellant's request for an involuntary manslaughter instruction.

*Palmer*, 687 N.E.2d at 702-03. The district court characterized the evidence in similar fashion:

Palmer testified that he exited Hill's automobile with a loaded and cocked firearm in his hand. Each of Palmer's victims were shot twice in the head, arguably the most lethal location on the body in which to shoot a person. By his own testimony, Palmer admits that he shot Sponhaltz the second time after Hill shouted "kill him, kill him!" Vargo's body was found approximately fifty feet from where Sponhaltz was murdered, which contradicts Palmer's testimony that he came face-to-face with Vargo as soon as he turned away from Sponhaltz after shooting him. Palmer cocked and pulled back the hammer of the weapon between each of the four shots he fired. Such evidence, especially coming from Palmer's own mouth, negates his claim that he did not intend to kill Sponhaltz and Vargo. As such, the Ohio Supreme Court's conclusion that the trial court did not err in denying Palmer's request for an

- 10 -

instruction on the lesser included offense of involuntary manslaughter was not objectively unreasonable.

*Palmer*, 2005 WL 3965400, at *35 (internal citations omitted).

For the same reasons articulated by the Supreme Court of Ohio and the district court, we agree that a jury could not rationally have found that Palmer lacked the specific intent to kill each victim. We add that several law enforcement officers testified at trial that Palmer confessed to them that "he shot the man again to make sure he was dead" and shot "the second guy" because he believed he had witnessed the first killing. In addition, one officer testified that Palmer showed no remorse when describing how he "popped" the victims.

For these reasons, the state trial court's refusal to give an involuntary manslaughter instruction was not contrary to clearly established Supreme Court precedent, and petitioner is not entitled to relief.[3]

C.

Palmer contends that the trial court erroneously instructed the jury that it could convict him of aggravated murder without finding that he intended to kill.

On direct appeal, the state court of appeals held that Palmer forfeited the issue by not raising an objection during trial and, finding no plain error, rejected the claim. *Palmer*, 1996 WL 495576,

---

[3]We also note that in his concurrence, Justice Pfeifer voted to affirm the convictions and death sentence, despite his belief that the prosecution failed to prove that the killings of Sponhaltz and Vargo, whom he characterized as "total strangers" shot in the "spur of the moment," were "the product of prior calculation and design." *Palmer*, 687 N.E.2d at 715 (Pfeifer, J., concurring). Justice Pfeifer concluded that dismissal of those counts would not affect the felony-murder convictions which he alternatively concluded justified the death penalty. *Id*.

at *9. The Supreme Court of Ohio affirmed without discussion. *Palmer*, 687 N.E.2d at 695-96. The district court noted that the Warden failed to argue that the issue was procedurally defaulted and thus denied the claim on its merits. *Palmer*, 2005 WL 3965400, at *36.

In this appeal, the Warden concedes that she failed to raise procedural default in the district court but argues that we should, in our discretion, hold the claim procedurally defaulted. Palmer counters that the Warden's procedural default argument is untimely and that we should deny the Warden's invitation to consider it because of the "serious consequences facing" him.

We hold that the claim is procedurally defaulted. The procedural default bar, as applied in the habeas context, "precludes federal courts from reviewing claims that a state court has declined to address, because of a petitioner's noncompliance with a state procedural requirement." *Howard v. Bouchard*, 405 F.3d 459, 475 (6th Cir. 2005). *See also Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). We have held that "Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice." *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). When a state appellate court reviews an issue for plain error, we view it as the state's enforcement of a procedural default. *Id.* "In determining whether state courts have relied on a procedural rule to bar review of a claim, we look to the last reasoned opinion of the state courts and presume that later courts enforced the bar instead of rejecting the defaulted claim on its merits." *Id*.

In this case, the Ohio Court of Appeals, which issued the last comprehensive opinion reviewing the instant claim, unambiguously enforced Ohio's contemporaneous objection rule. The court stated:

> As was the case under appellant's second assignment of error, his claim of an erroneous and misleading jury instruction must fail since he failed to raise an objection during trial pursuant to [OHIO] CRIM. R. 30(A).[4] Absent plain error, the failure to object to alleged improprieties in jury instructions constitutes a waiver of such issue on appeal.

*Palmer*, 1996 WL 495576, at *9 (internal citations omitted). The court then rejected Palmer's contention that the trial court plainly erred, ruling instead that any error was harmless. *Id*.

That the Warden failed to argue procedural default in the district court does not entitle a habeas petitioner to a merits-based review of his claim. In *Elzy v. United States*, 205 F.3d 882 (6th Cir. 2000), we explained that

> we are not required to review the merits of defaulted claims simply because the Government has failed to raise the issue. While procedural default is not a jurisdictional bar to review of such a claim, and the Government's failure to raise the default may operate as a forfeiture of its right to defend on that ground, we nonetheless may raise these issues *sua sponte*.

*Id*. at 886. We make no exception for capital cases. *See White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005) (holding a claim procedurally defaulted in a capital case because "[w]e are . . . permitted

---

[4]Rule 30(A) provides, in pertinent part: "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."

to consider the procedural default issue even when raised for the first time on appeal if we so choose").

Because we hold that this claim is procedurally defaulted, Palmer "waived the right to federal habeas review unless [he] can demonstrate cause for noncompliance and actual prejudice arising from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice." *Hinkle*, 271 F.3d at 244-45 (quoting *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (internal quotation marks omitted)). Because Palmer makes no attempt to show cause, prejudice, or a miscarriage of justice that would excuse the procedural default, we deny relief on this claim. *See Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) ("It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.").

Assuming arguendo that Palmer did not forfeit the claim, we alternatively deny it on its merits. The trial court instructed the jury as follows (the allegedly erroneous instruction is in italics):

> [1] Purpose to cause the death of another is an essential element of the crime of aggravated murder.
>
> [2] A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to cause the death of [the victims].
>
> [3] *A person acts purposely when the gist of the offense is a prohibition against conduct of a certain nature regardless of what the offender intends to accomplish thereby, if it is his specific intention to engage in conduct of that nature.*
>
> [4] Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself unless he expresses it to others or indicates it by his conduct.

- 14 -

[5] The purpose with which a person brings about a result is determined from the manner in which it is done, the weapon used, and all other facts and circumstances in evidence.

[6] No person shall be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another.

*Palmer*, 2005 WL 3965400, at *36 (emphasis added).

Palmer argues that the third paragraph "allowed the jury to convict [him] of aggravated murder if it believed that he specifically intended to engage in certain conduct other than purposely killing the victims," such as waving his gun at Sponhaltz, cocking the pistol and firing it in the direction of the victims, or becoming intoxicated, and that the trial court "exacerbated the problem . . . by repeating [the erroneous instruction] with respect to each of the aggravated murder charges." The district court ruled that the offensive paragraph, when considered with the trial court's remaining instructions, adequately conveyed to the jury that it had to find that Palmer specifically intended to kill before it could convict him of aggravated murder. *Palmer*, 2005 WL 3965400, at *37. It also ruled that the error was harmless in light of the strong evidence that Palmer intended to kill. *Id*.

"To warrant habeas relief, jury instructions must not only have been erroneous, but also, *taken as a whole*, so infirm that they rendered the entire trial fundamentally unfair." *Doan v. Carter*, 548 F.3d 449, 455 (6th Cir. 2008) (quoting *Austin v. Bell*, 126 F.3d 843, 846-47 (6th Cir. 1997) (internal quotation marks omitted)) (emphasis added); *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). "When a court makes an error in instructing the jury, the proper inquiry is 'whether there is a reasonable likelihood that the jury' applied the instruction 'in an unconstitutional manner.'" *Doan*, 548 F.3d at 455 (quoting *Victor v. Nebraska*, 511 U.S. 1, 6 (1994)).

- 15 -

The trial court erred in giving the "gist of the offense" paragraph. The Supreme Court of Ohio has stated that such language "is confusing in a murder prosecution which requires 'purpose.'" *State v. Wilson*, 659 N.E.2d 292, 305 (Ohio 1996) (citing 4 OHIO JURY INSTRS. § 409.01(3) cmt. (1995)) ("The trial bench has been giving both § 2 [purpose and specific intent] and § 3 [gist of the offense] in 'result' situations (aggravated murder) and it is both incorrect and confusing"). The comments state that "gist of the offense" is intended to be given "in rare cases where conduct is prohibited, e.g., Corruption of a minor." 4 OHIO JURY INSTRS. § 409.01(3) cmt. (1995)). In granting the COA on this issue, the district court acknowledged that the "gist of the offense" instruction was "not relevant to the charges made in this case."

Nevertheless, we conclude that there was no reasonable likelihood that the jury interpreted the "gist of the offense" paragraph as authorizing it to convict Palmer of aggravated murder without finding that he intended to kill. Particularly on the facts in this case, the meaning of the "gist of the offense" paragraph would have been unclear to the jury. Because the paragraph was so vaguely worded, it is likely that the jury simply gave that portion of the aggravated murder instruction little attention. Even if the jury dwelled upon it, nowhere did the paragraph authorize the jury to presume specific intent or convict Palmer of aggravated murder if it found that he did not intend to kill the victims.[5]

---

[5]Because the aggravated murder instruction neither created a presumption that Palmer intended to kill nor withheld from the jury's consideration the question of his intent, Palmer erroneously relies upon *Sandstrom v. Montana*, 442 U.S. 510 (1979) and *United States v. Gaudin*, 515 U.S. 506 (respectively holding that a jury instruction authorizing the jury to "presume" the defendant's intent in an intentional homicide case and the trial court's refusal to allow the jury to

Significantly, the remaining five paragraphs in which the objectionable language was nested repeatedly, unambiguously, and correctly instructed the jury that it had to find that Palmer acted with "purpose" and "intent" to kill in order to convict him of aggravated murder. The first paragraph instructed that "[p]urpose to cause the death of another is an essential element of the crime of aggravated murder." The second paragraph then defined "purpose" as having specific intent to kill: "It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to cause the death of [the victims]." After paragraphs four and five further defined "purpose," the sixth paragraph left no doubt in jurors' minds that they had to find that Palmer specifically intended to kill: "No person shall be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another." Our law presumes that the jury followed these clear instructions. *United States v. Tines*, 70 F.3d 891, 898 (6th Cir. 1995) (citing *Zafiro v. United States*, 506 U.S. 534 (1993)).

Assuming arguendo that the "gist of the offense" paragraph created a reasonable likelihood that the jury applied the aggravated murder instruction in an unconstitutional manner, for the same reasons articulated in subsection B of this opinion about why an involuntary manslaughter instruction was inappropriate, we alternatively hold that the error was harmless. *See Neder v. United States*, 527 U.S. 1, 9-10 (1999) (surveying cases holding that an improper jury instruction on a single element of an offense – whether the erroneous instruction is an omission or a "misdescription" of

decide whether the defendant's statements were "material" in a prosecution for making false statements under 18 U.S.C. § 1001 deprived both defendants of their due process rights by relieving the state of its burden of proving every element of the charged offenses).

- 17 -

the element – is not a structural error defying harmless-error review).[6]  Even if the offending

instruction were excised, *see Kibbe*, 431 U.S. at 154 ("An appraisal of the significance of an error

in the instructions to the jury requires a comparison of the instructions which were actually given

with those that should have been given."), no jury could rationally have found that Palmer lacked

the specific intent to kill each victim in light of the overwhelming evidence.

Accordingly, we alternatively hold this claim forfeited and meritless under our de novo

review.

D.

Palmer contends that he was denied a fair trial because of alleged prosecutorial misconduct

arising from the prosecutor's (1) allegedly misleading closing argument to the jury that the "prior

calculation and design" necessary to convict him of aggravated murder could occur in ten to fifteen

seconds and (2) introduction of evidence in the penalty phase that Palmer (a) failed to pay child

support and (b) sexually abused his children.

1.

Regarding the first alleged instance of misconduct, the prosecutor remarked in his closing

argument during the guilt phase:

> Although it's true that we have to show the defendant had a specific intent to kill this
> man, and it's true we have to show that he had some degree of forethought that he
> thought about it for some period of time, there is no legally required period of time.
> The defendant testified the whole thing happened in 10 to 15 seconds.  If in those 10

---

[6]Palmer's reliance upon *Neder* is puzzling because it authorized harmless-error review of erroneous jury instructions.

to 15 seconds, if that's true – and we submit the evidence will show that that length of time is virtually impossible – but even if that were true, it is legally possible for the defendant to have in his mind sufficient prior calculation and design in that period of time.

Although the Ohio Court of Appeals characterized the prosecutor's argument as a misstatement of the law, it held that Palmer forfeited the issue by not objecting and reviewed for plain error but found none. *Palmer*, 1996 WL 495576, at *12. The Supreme Court of Ohio affirmed without discussion. *Palmer*, 687 N.E.2d at 695-96. The district court ruled that the claim was forfeited and alternatively meritless, holding that the prosecutor accurately stated the law and suggesting that the state appellate court erred in concluding that he did not. *Palmer*, 2005 WL 3965400, at *20-*21.

Acknowledging his possible procedural default of this claim, Palmer attempts to circumvent that result by arguing that procedural irregularities occurred in the district court that justify review of his claim and, alternatively, that he is actually innocent of the specific intent to kill. However, for the reasons stated below, none of these contentions entitles Palmer to a merits-based review.

a.

Palmer explains that he filed a motion for summary judgment in the district court on all procedural-default defenses asserted by the Warden. He contends that he argued in his motion the Warden's failure to raise procedural default regarding this claim. Thereafter, the chief magistrate judge entered an R&R identifying those claims for which the Warden raised procedural default. The

instant claim was not one of them.[7] The Warden failed to object to the R&R's exclusion of the claim as one that was subject to procedural default, and the chief magistrate judge then issued a supplemental R&R reaffirming his findings. Thereafter, the district court adopted both the initial and supplemental R&Rs.

Palmer complains that in his subsequent R&R on the merits, adopted by the district court, the chief magistrate judge improperly reversed his prior determinations that the procedural default defense was inapplicable by holding that it was indeed procedurally defaulted. According to Palmer, this was error because the defense was waived and the chief magistrate and district judges exceeded their authority by raising the defense sua sponte without a showing of newly discovered facts a or change in the law and without giving him the opportunity to brief it, ignored Rules 56 and 72 of the Federal Rules of Civil Procedure and 28 U.S.C. § 636, and misapplied our decisions in *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002) and *Sowell v. Bradshaw*, 372 F.3d 821 (6th Cir. 2004), where we explained that a court could raise procedural default sua sponte but declined to do so.

Palmer's contentions are unavailing for several reasons. First, the district court's summary judgment order was only a partial grant of summary judgment regarding the applicability of the procedural default defense on the various claims. As such, the order was a non-final order entered prior to the court's entry of final judgment denying the habeas petition and terminating the case. Therefore, the district court could revise the order at any time prior to final judgment. *See* FED. R.

---

[7]In his reply brief, Palmer acknowledges that he mistakenly represented in his initial brief that the magistrate judge found that no procedural default defense had been raised with respect to the child support and sexual abuse claims.

CIV. P. 54(b) (providing that the district court may direct entry of a final judgment as to one or more, but fewer than all, claims "only if the court expressly determines that there is no just reason for delay" but that "[o]therwise, any order or other decision, however designated, that adjudicates fewer than all the claims . . . does not end the action as to any of the claims . . . *and may be revised at any time before the entry of a judgment adjudicating all the claims . . . .*") (emphasis added).

Second, contrary to Palmer's argument, he *was* afforded the opportunity to object to the chief magistrate judge's later recommendation that the claim be deemed procedurally defaulted, and he *did*, in fact, object; the district judge simply overruled the objection and adopted the chief magistrate judge's recommendation. Because Palmer was given a fair opportunity to advance his argument before the district court entered its ruling, the court did not abuse its discretion in sua sponte raising procedural default. *See Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998) (holding that district court did not abuse its discretion in raising procedural default problem sua sponte because the petitioner had an opportunity to respond).

Third, Palmer mis-characterizes the chief magistrate judge's recommendation that the claim be deemed procedurally defaulted as an impermissible reversal of the district judge's prior orders. Contrary to the interpretation Palmer urges us to adopt, the chief magistrate judge's recommendation was just that – a *recommendation*. It is the district judge who determines whether to reject or adopt a magistrate judge's recommendation and who is authorized to make a fresh determination even when no objection was made. *See Delgado v. Bowen*, 782 F.2d 79, 81-82 (7th Cir. 1986) (holding that the district judge may, under 28 U.S.C. § 636(b)(1)(C), reject or modify the magistrate judge's

recommendations even when no objection was made because "[t]he order of the [district] judge is the final and authoritative word in the district court"). Neither Rule 56 nor Rule 72 of the Federal Rules of Civil Procedure, which Palmer cites, provides to the contrary.[8]

Finally, Palmer's attempt to distinguish *Coyle* and *Bradshaw* is misplaced. In both of those cases, we acknowledged that a court may, in its discretion, raise procedural default sua sponte despite the government's failure to defend on that ground. *See Coyle*, 291 F.3d at 427 (stating that "[i]t would . . . not be improper for us to decline review of these claims, since the state courts did not have the opportunity to address them"); *Bradshaw*, 372 F.3d at 830 (acknowledging that "this court may consider a newly-raised default argument, if it so wishes"). However, we declined to consider procedural default in both of those cases because of "the somewhat oblique manner in which Respondent raised the defense," *see Coyle*, 291 F.3d at 427, and "[i]n light of the resources that have been expended by the district court and the serious consequences . . . , and because the Warden did not make this argument to the district court." *Bradshaw*, 372 F.3d at 830. Here, unlike *Coyle* and *Bradshaw*, the defense was not raised in an "oblique" manner, and the district court ruled on the defense after Palmer responded. Accordingly, we hold that the district court did not abuse its discretion in sua sponte raising procedural default and affirm its ruling on that issue.

b.

---

[8]Rule 56 is the summary judgment rule, and Rule 72(a) prohibits a *party*, not the court, from "assign[ing] as error a defect in the [R&R] not timely objected to."

Palmer alternatively contends that his procedural default is excused because he is actually innocent of the prior calculation and design and purposeful killing death specifications. However, that argument fails for two reasons.

First, Palmer forfeited the issue by not raising it in his objections to the chief magistrate judge's recommendation that the claim be deemed procedurally defaulted. *See United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001) (holding that a party waives on appeal any issue in the R&R to which it has failed to object).

Second, the argument is meritless. The United States Supreme Court has stated that

> [t]he miscarriage of justice exception is concerned with actual as compared to legal innocence. We have often emphasized the narrow scope of the exception. To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial. Given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected.

*Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (internal citations and quotation marks omitted). Palmer does not contend that there is "reliable evidence not presented at trial" establishing his actual innocence.

Because Palmer's claim of actual innocence is both forfeited and meritless, it does not excuse his procedural default on his prosecutorial misconduct claim of improper argument.

c.

Even if the claim were not procedurally defaulted, we agree with the district court that Palmer would not be entitled to relief on the merits.

To warrant a writ on grounds of prosecutorial misconduct, the habeas petitioner bears a heavy burden. He must show that the prosecutor's statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The focus is on "the fairness of the trial, not the culpability of the prosecutor," *Smith v. Phillips*, 455 U.S. 209, 219 (1982), and "[r]eversal is required only if the prosecutor's misconduct is 'so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant.'" *Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)).

Our two-part test for assessing whether the alleged misconduct satisfies this standard requires that we examine (1) whether the prosecutor's remarks were indeed improper and, if so, (2) whether they were flagrant. *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002). Harmless errors are disregarded. *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003).

The prosecutor's remarks were not improper because they did not misstate the law. In *State v. Taylor,* 676 N.E.2d 82 (Ohio 1997), the Supreme Court of Ohio stated that it is "not possible to formulate a bright-line test that emphatically distinguishes between the presence or absence of 'prior calculation and design.' Instead, each case turns on the particular facts and evidence presented at trial." *Id*. at 89. While the court has stated that "'momentary deliberation' is insufficient" to support "prior calculation and design," it has also held that "[n]either the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves." *State v. D'Ambrosio*, 616 N.E.2d 909, 918 (Ohio 1993) (quoting *State v. Pierce*, 414 N.E.2d 1038,

1042 (Ohio 1980)) (internal quotation marks omitted). *See also* 1974 Committee Comment to Ohio Revised Code Annotated § 2903.01 (same).

Consistent with these decisions, the Supreme Court of Ohio acknowledged in *Taylor* that "[t]his court has upheld findings of prior calculation and design in some short-lived emotional situations other than the Technical Committee's 'classic' concept of the 'planned, cold-blooded killing.'" *Taylor*, 676 N.E.2d at 89. *See*, *e.g.*, *State v. Conway*, 842 N.E.2d 996, 1013 ¶ 46 (Ohio 2006) (holding that the "two to two and a half minutes" between the stabbing of defendant's brother and defendant's first retaliatory shot was sufficient to establish "prior calculation and design"); Ohio's appellate courts have similarly held. *See*, *e.g.*, *State v. Williams*, No. 03AP-24, 2003 WL 22434597, at *11-*12 ¶ 15 (Ohio Ct. App. Oct. 28, 2003) (unpublished) (holding that "prior calculation and design" was established where defendant shot unfamiliar victims several times after a confrontation that "only lasted a few minutes").

The absence of a "bright-line test" was fertile ground for legal argument. The prosecutor's remarks that "we have to show that he had some degree of forethought that he thought about it for some period of time, [but that] there is no legally required period of time" and that "it is legally possible for the defendant to have in his mind sufficient prior calculation and design in [10 to 15 seconds]" were neither erroneous nor improper.

Moreover, the court, not the prosecutor, instructs the jury on the applicable law. Palmer does not contend that the *court's* instructions on "prior calculation and design" were erroneous, and we presume that the jury followed the court's instructions on the law. *Tines*, 70 F.3d at 898.

For these reasons, we alternatively hold Palmer's claim of prosecutorial misconduct arising from the prosecutor's allegedly misleading argument about "prior calculation and design" both forfeited and meritless.

2.

Regarding the remaining two claims of alleged prosecutorial misconduct – the introduction of evidence in the penalty phase that Palmer failed to pay child support and sexually abused his children – the district court held them procedurally defaulted because they "were not raised in the state courts as errors occurring in the *penalty* phase of the trial" and alternatively meritless because the evidence was "fair rebuttal" to Palmer's evidence of "his kind and considerate nature" and his testimony that "he was upset by his loss of his children in his divorce." *Palmer*, 2005 WL 3965400, at *32. The court also found it unlikely that the alleged failure to pay child support "was the proverbial 'straw that broke the camel's back'" because of the "substantial evidence against him respecting the aggravating circumstances of the murders." *Id*. Regarding the sexual abuse evidence, the court noted that Palmer's wife "vacillated and equivocated about the truth" of this divorce petition allegation and "testified that the allegation may have been suggested to her daughter by her family members." *Id*. The court concluded that "the complained-of evidence was unlikely to have impacted the outcome of Palmer's sentencing hearing given the strong evidence against him." *Id*.

Palmer contends that the district court erred in ruling that these claims were procedurally defaulted and meritless. Regarding procedural default, he asserts that: he raised the issues in his direct appeal, although he referred to them as "other acts" in the guilt phase of his trial; he was not

required to raise the claims as "mitigation phase claims" to properly preserve them; neither the state appeals court nor the Supreme Court of Ohio relied on a procedural bar when reviewing the claims; and the state reviewing courts were required to review the "cumulative effect of improper comments made during the course of the entire trial."

We need not address whether the claims were procedurally defaulted because they are meritless. Although Palmer contends that the district court erred in ruling that he "opened the door" to this evidence, the admission of the evidence did not violate clearly established Supreme Court precedent because the Constitution permits the states to admit *all* other-acts evidence in the penalty phase of a capital case:

> Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty, the jury then is free to consider a myriad of factors to determine whether death is the appropriate punishment. Indeed, the sentencer may be given *unbridled discretion* in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty.

*Tuilaepa v. California*, 512 U.S. 967, 979-80 (1994) (internal citations, quotation marks, and ellipses omitted) (emphasis added).

Even if that were not the case, we, like the district court, are confident that the admission of the complained-of evidence did not so infect the trial with unfairness as to make the resulting death sentence a denial of due process because of the overwhelming evidence of defendant's guilt. Accordingly, petitioner is not entitled to relief on these claims.[9]

_____

[9]Palmer's claims of prosecutorial misconduct regarding additional other-acts evidence are not properly before us because they were not certified for review, and we do not consider them.

III.

We affirm the district court's denial of Palmer's petition for a writ of habeas corpus.

---

*Cooey*, 289 F.3d at 887.