NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0169n.06

No. 09-1629

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Mar 23, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| DIARRE HAMILTON, | ) | |
| | ) | |
| Petitioner-Appellant | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| ANDREW JACKSON, Warden, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

BEFORE: MOORE, COLE, and ROGERS, Circuit Judges.

**ROGERS, Circuit Judge.** This challenge to the denial of a request for a writ of habeas corpus requires determining simply whether the state court of appeals unreasonably applied federal law. Petitioner Diarre Hamilton challenges the fairness of the state trial court proceedings against him, alleging prosecutorial misconduct and ineffective assistance of counsel. Hamilton contends that the state prosecutor ridiculed Hamilton's defense counsel, referred to a subject matter in closing argument that the court had ordered the jury to disregard, and advised the jury to disregard the court's instructions. Because the Michigan Court of Appeals did not unreasonably apply federal law when ruling against Hamilton, habeas relief is not warranted.

**I.**

Hamilton's convictions arose from the shooting death of Tranika Brown and the non-fatal injuring of Kelvin Brown. At trial, the state claimed that both victims were shot after Hamilton and

his co-defendant Kenya Rogers had robbed Corey Gibbs, and were interrupted by Tranika Brown and Sallie Jackson when they were attempting to rob Kelvin Brown. A jury found Hamilton guilty on all charges, including first degree felony murder in violation of Mich. Comp. Laws § 750.316(1)(b), assault with intent to commit murder in violation of Mich. Comp. Laws § 750.83, armed robbery in violation of Mich. Comp. Laws § 750.529, assault with intent to rob while armed in violation of Mich. Comp. Laws § 750.89, and possession of a firearm during the commission of a felony in violation of Mich. Comp. Laws § 750.227b. The state court sentenced Hamilton to life in prison without parole for the felony-murder charge, twenty-five to forty years for the assault-with-intent-to-murder charge, twenty to thirty years for the armed-robbery charge, twenty to thirty years for the assault-with-intent-to-rob-while-armed charge, and two years for the felony-firearm-possession charge; the court ordered all sentences to be served concurrently, except for the firearm charge, which was to be served first and consecutive to the other counts.

Hamilton appealed his conviction to the Michigan Court of Appeals, claiming that he was denied a fair trial because of several instances of misconduct by the prosecutor, that his trial counsel was ineffective, and that the trial court improperly precluded him from questioning a witness regarding a pretrial capias and the sentences the witness received for his past convictions. The court of appeals rejected each of these claims and affirmed Hamilton's convictions. This prompted Hamilton to apply for leave to appeal to the Michigan Supreme Court, but the supreme court denied this application.

On April 1, 2005, Hamilton filed a petition with the United States District Court for the Eastern District of Michigan, requesting a writ of habeas corpus. In his petition, Hamilton argued that the prosecutor's misconduct during trial violated his due process rights. Hamilton claimed that "[t]he prosecutor falsely and improperly accused defense counsel of misleading the jury during closing argument[,] the prosecutor made deliberate reference to a subject that the court had instruct[ed] the jury to disregard[, and] the prosecutor urged the jury to disregard the law." Further, Hamilton asserted that he "was denied the effective assistance of trial counsel where counsel failed to object to the prosecutor's repeated attacks on [counsel's] veracity," and that he "was denied a fair trial through the cumulative effect of the errors." Hamilton also argued that the trial court had violated his right to present a defense, alleging that "the trial court excluded evidence of a complainant's sentences and capias history for offenses pending during [Hamilton's] case."

Hamilton focused in particular on three instances of alleged prosecutorial misconduct. First, Hamilton challenged statements the prosecutor made during his closing, which Hamilton believed were improper attacks on defense counsel. In particular, the prosecutor stated that "[t]here has been a concerted effort throughout the presentation of evidence through cross examination techniques to obfuscate, confuse, and take your eyes collectively off of the focus of what's important here." In addition, the prosecutor referred to defense counsel's "trying to snow" the jury and "making suggestions outside of the record." However, Hamilton did not object to these statements at trial.

Second, Hamilton challenged the prosecutor's display of the abbreviation "Okla" on a chart during the rebuttal portion of his closing argument. During defense counsel's discussion of the lack

of proof against Hamilton in his closing argument, defense counsel began to state, "What about all those people in Oklahoma they just found out—," but the prosecutor interrupted and asked to approach the bench. After a bench conference, the court instructed the jury that "there's no relationship between what happened in the case in Oklahoma and here, so you disregard any references to Oklahoma." Then, the prosecutor, during his rebuttal, displayed the abbreviation "Okla" in reference to the defense counsel's mention of Oklahoma and despite the court's instructing the jury to disregard any such mentioning. Defense counsel objected to this reference to "Okla" and requested a mistrial on the basis of prosecutorial misconduct. Though the trial court strongly admonished the prosecutor for reinjecting the mention of Oklahoma during his rebuttal, that court did not believe this constituted prosecutorial misconduct.

Finally, Hamilton claimed that the prosecutor improperly advised the jury to disregard the law. During his closing, the prosecutor made the following argument:

> The law requires the Judge to give you some things that are pretty ridiculous. You're going to hear something about involuntary manslaughter, whether or not this was gross negligence. To turn and shoot at killing level is not gross negligence. To engage in robbing Mr. Gibbs and Mr. Kelvin Brown does not gross negligence make.
> And, it even gets more ridiculous, ladies and gentlemen, because you're going to hear the law requires self-defense—they ain't in no house and they've got to retreat before resorting to any physical force. *Yet the law is such an ass on these facts that you're going to hear that it's my burden to prove that these two men did not act in self-defense as they were robbing Mr. Gibbs, as they were robbing Mr. Kelvin Brown, and turns and is shooting at head level towards people. You tell me that law isn't an ass.*

(Emphasis added.) Hamilton's counsel objected at trial to the propriety of this statement as he believed it was "arguing jury nullification," but the trial court, in considering all of Hamilton's objections, found no prosecutorial misconduct.

In denying habeas corpus relief, the federal district court below rejected each of Hamilton's claims. Though the court mentioned that part of Hamilton's prosecutorial misconduct claim might be procedurally defaulted, the court decided that judicial economy supported proceeding directly to the merits of Hamilton's claims. The district court found no prosecutorial misconduct. Instead, the district court concluded that "the prosecutor's closing and rebuttal argument did not abridge [Hamilton's] right to a fair trial;" that the trial court properly denied Hamilton's motion for a mistrial "[i]n light of the trial court's cautionary instruction that statements made by the attorneys are not evidence, and the fact that the prosecutor's Oklahoma reference was not so prejudicial as to deprive [Hamilton] of a fair trial;" and that, while the prosecutor's instructing the jury to disregard the law was improper, "the statements were isolated and did not permeate the atmosphere of the trial." Because Hamilton could not "demonstrate that his counsel's failure to object to the prosecutor's improper comments deprived him of a fair trial," the district court also held that Hamilton's ineffective-assistance claim failed. Finally, the district court found that Hamilton did have a meaningful opportunity to present a defense.

Hamilton appeals, and has obtained certification of two issues for appeal: "1) whether [Hamilton] was denied a fair trial based on prosecutorial misconduct; and 2) whether his counsel was ineffective for failing to object to the prosecutor's attacks on defense counsel's veracity."

**II.**

Hamilton has not shown that the Michigan Court of Appeals unreasonably applied federal law in rejecting his claims of prosecutorial misconduct. Though two of the bases for Hamilton's prosecutorial-misconduct claim were properly raised before the state court of appeals and this court and thus should be analyzed on the merits, one basis is procedurally defaulted. As he did in the district court, Hamilton claims on appeal that he was denied a fair trial as guaranteed by the Fifth Amendment, because of the prosecutor's misconduct in (1) falsely and improperly accusing defense counsel of misleading the jury during closing argument, (2) making deliberate reference to the Oklahoma City bombing after the court had instructed the jury to disregard that subject, and (3) advising the jury to disregard the law as contained in the jury instructions.

A.

Hamilton failed to raise any objection at trial to the first basis for his prosecutorial-misconduct claim. Because defense counsel did not object to this conduct, this claim is procedurally defaulted. Each of the elements required for a claim to be procedurally defaulted is satisfied here—the failure to object to these portions of the prosecutor's closing at trial invoked Michigan's forfeiture rule, the Michigan Court of Appeals enforced this procedural rule by applying plain-error review to this issue in Hamilton's state appeal, and this procedural forfeiture is an independent and adequate state ground foreclosing federal review. *See Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003); *see also Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) (demonstrating that the state court's review of an issue for plain error constitutes the enforcement of a procedural rule); *Rogers*

*v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (explaining that a state procedural rule is adequate and independent if it "was firmly established and regularly followed by the time as of which it was to be applied"); *People v. Carines*, 597 N.W.2d 130, 137-40 (Mich. 1999) (applying the forfeiture rule in regard to unpreserved claims of constitutional error). Moreover, Hamilton does not directly address the Government's procedural-default argument on appeal. Thus, Hamilton's claim of prosecutorial misconduct based on the prosecutor's alleged "attacks" on defense counsel during closing argument is procedurally defaulted, and we need only consider the merits of his two remaining prosecutorial-misconduct claims.

B.

The Michigan Court of Appeals reasonably concluded that Hamilton's second basis for his prosecutorial-misconduct claim—referring to Oklahoma after the court instructed the jury to disregard that subject—did not present a constitutional violation. The Antiterrorism and Effective Death Penalty Act (AEDPA) requires federal courts to determine, in reviewing a state court's denial of a writ of habeas corpus, whether the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Because AEDPA requires the showing of an "unreasonable" application of federal law and not merely an incorrect one, this is a "highly deferential" standard, and it "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The Michigan Court of Appeals was the last state court to issue a reasoned opinion on Hamilton's prosecutorial-misconduct

claim, as the Michigan Supreme Court merely issued a one-sentence order denying review of the

court of appeals' judgment. In regard to this basis for Hamilton's prosecutorial-misconduct claim,

the Michigan Court of Appeals held as follows:

> We agree that it was improper for the prosecutor to point to "Okla" on a chart after the court had earlier ruled, in response to an improper reference by defense counsel, that the jury was to disregard any references to "Oklahoma." However, in light of the trial court's instruction to the jury to disregard any references to Oklahoma, and defendant's failure to pursue this issue further, we are satisfied that this isolated occurrence did not deprive defendant of a fair and impartial trial.

This was not an unreasonable application of federal law.

Though the court of appeals found the prosecutor's reference to Oklahoma improper, it did

not believe this impropriety was flagrant. According to federal law, to make out a prosecutorial

misconduct claim, one must first demonstrate that the prosecutor's conduct and remarks were

improper, and then must demonstrate that the impropriety was flagrant and thus violated the

defendant's due process rights. *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002). Flagrancy

is analyzed by weighing whether the prosecutor's conduct tended to mislead the jury or prejudice

the accused, whether it was isolated or extensive, whether it was deliberate or accidental, and the

strength of the evidence against the defendant. *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir.

1994). The trial court's instructions to the jury are certainly relevant to whether the prosecutor's

actions tended to mislead the jury or prejudice Hamilton. Moreover, the court of appeals was correct

in noting that the prosecutor's reference to Oklahoma was not extensive, as the prosecutor did not

even specifically refer to the word "Okla" but merely placed it on a chart that he displayed to the

jury. These factors weigh in favor of finding no flagrancy in the prosecutor's improper actions, and

thus the state court was reasonable in concluding that the Oklahoma reference did not constitute constitutionally offensive prosecutorial misconduct.

C.

In holding that the prosecutor's reference to the "law [as] an ass" did not constitute prosecutorial misconduct, the Michigan Court of Appeals again reasonably applied federal law. In regard to this basis for Hamilton's prosecutorial-misconduct claim, the court of appeals explained:

> Defendant further argues that the prosecutor improperly urged the jury to disregard the law. A defendant has no burden to produce any evidence. However, the prosecutor does not shift the burden of proof by commenting on the improbability of a defendant's theory, or by arguing, as he did here, that the evidence did not meet the definition of self-defense. Further, the jury was instructed that the arguments of counsel were not evidence and that it was to follow the instructions given by the court, even if the attorneys said something different. The court's instruction was sufficient to cure any perceived prejudice. Defendant was not denied a fair trial on this basis.

(Citations omitted.) The court of appeals appears to have interpreted the prosecutor's reference to the "law [as] an ass" as the prosecutor's trying to say that it would be ridiculous to find self-defense "on the facts." Stated differently, the court of appeals did not believe that the prosecutor was saying that the law should never require him to prove a lack of self-defense, but that the evidence is so clear that it was not self-defense in Hamilton's case that the prosecutor should not have to offer proof to that effect. Though this language can be read literally to call into question Michigan's requirement that the state prove a lack of self-defense if the defendant alleges self-defense, the Michigan Court of Appeals' differing interpretation was not unreasonable.

The language chosen by the prosecutor was certainly not appropriate, but the court of appeals could reasonably find, as it did in Hamilton's case, that the language did not rise to the level of flagrancy required to demonstrate prosecutorial misconduct. Even though the prosecutor's statement, viewed in isolation, appears strong and pointed, it did not pervade his presentation of evidence or his closing arguments. These comments took up only two paragraphs of the prosecutor's closing statements, which filled approximately thirty-seven pages of the transcript in total. Moreover, the prosecutor had presented a great deal of compelling evidence against Hamilton, including the testimony of officers on the scene, officials involved in the homicide investigation, and several eyewitnesses, who each testified that Hamilton deliberately fired shots in the direction of the victim. Thus, the jury had strong evidence to support its verdict against the defendant, making any prejudice from the prosecutor's statements unlikely. Finally, Hamilton has not shown that this language misled the jury. The trial court instructed the jury that it should apply the law as the court explains it—not as counsel explains it—and that the prosecutor had the burden to prove beyond a reasonable doubt that Hamilton did not act in self defense.[1] Considering all this, the court of appeals had a reasonable basis for determining that the prosecutor's statement did not so infect the

---

[1]The trial court also reiterated this first point in response to questioning from the jury during deliberations. The jury submitted a question about the law on aiding and abetting and, in an attempt to clarify its question, one juror stated, "Are the charges the same because the Prosecutor might have said, I was wondering coming from you as far as aiding and abetting goes." In response to this inquiry, the trial judge explained, "Aiding and abetting, the law is what I say and it's what [is] on the written instructions. . . . You always follow the law that I give you. You don't follow the law that either the Prosecutor or the Defense gives you. They are just arguing. The law is what I say it is and what's on these written instructions."

proceedings that Hamilton's trial was fundamentally unfair.[2] *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

### III.

The Michigan Court of Appeals also reasonably applied federal law in determining that Hamilton did not receive ineffective assistance of counsel at trial. AEDPA deference also applies to Hamilton's ineffective-assistance-of-counsel claim; therefore, we cannot find in Hamilton's favor unless he shows that the court of appeals unreasonably applied federal law. The law governing an ineffective-assistance-of-counsel claim was laid out in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court explained that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. Thus, to make out an ineffective-assistance claim, one must first "show that counsel's performance was deficient," which "requires showing that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment."[3] *Id.* at 687.

---

[2]Hamilton states in the final paragraph of his argument to this court that "[t]he cumulative effect of the errors in this case operated to deprive [Hamilton] of Due Process of law." The Michigan Court of Appeals rejected this argument and was correct in doing so.

[3]If the performance was deficient, the defendant must then show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result was reliable." *Strickland*, 466 U.S. at 687. Because the court of appeals based its ineffective-assistance determination on the first step and because it was reasonable in that determination, we need not reach the second step.

The Michigan Court of Appeals reasonably concluded that Hamilton's counsel's performance was not deficient. Hamilton argues, as he did to the state court of appeals, that his trial counsel's failure "to object to the prosecution's continual and extremely prejudicial attacks on [defense counsel's] veracity" rendered his counsel's performance deficient. However, the court of appeals disagreed, stating:

> Counsel's decision about how to argue to the jury was a matter of trial strategy. It appears that, rather than object to the prosecutor's remarks, counsel attempted to turn those remarks to defendant's advantage in his own closing argument. Defendant has not overcome the presumption of sound trial strategy. The fact that the strategy was not successful does not amount to ineffective assistance.

This was not an unreasonable application of *Strickland*. The record shows that trial counsel did object to the prosecutor's closing arguments on a number of occasions, including in response to the prosecutor's reference to Oklahoma and in response to the prosecutor's discussion of the burden of proof for self-defense. This supports the court of appeals' finding that trial counsel's failure to object to another portion of the closing was trial strategy and not deficient performance. The state court thus reasonably applied federal law in rejecting Hamilton's ineffective-assistance-of-counsel claim.

## IV.

For these reasons, we affirm the district court's denial of Hamilton's petition for a writ of habeas corpus.