**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0854n.06

**No. 09-1991**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| MICHAEL MORGAN, | ) | **FILED** |
|  | ) | *Dec 19, 2011* |
| Petitioner-Appellant, | ) | LEONARD GREEN, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR THE |
| BLAINE LAFLER, St. Louis | ) | EASTERN DISTRICT OF MICHIGAN |
| Correctional Facility, | ) |  |
|  | ) |  |
| Respondent-Appellee. | ) |  |

Before: COLE and ROGERS, Circuit Judges; and SARGUS, District Judge.[*]

**SARGUS, District Judge.** In this appeal from the denial by the United States District Court

for the Eastern District of Michigan of his petition for habeas corpus pursuant to 28 U.S.C. § 2254,

Michael Banks Morgan ("Morgan") challenges his conviction on a single ground. Specifically,

Morgan contends that the state trial court denied him his right to a fair trial by giving the jury a

confusing and incorrect instruction on aiding and abetting under Michigan law. For the reasons that

follow, we affirm.

The district court had jurisdiction pursuant to 28 U.S.C. § 2254 (habeas corpus petition by

individual in custody pursuant to the judgment of a State court). Our jurisdiction is premised upon

---

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern
District of Ohio, sitting by designation.

1

28 U.S.C. § 1291 (final orders) and 28 U.S.C. § 2253(c) (appeal from habeas proceeding upon issuance of certificate of appealability). The notice of appeal was complete and timely.

**I.**

The parties do not dispute the facts giving rise to the criminal charges against Morgan. Accordingly, this Opinion draws the factual recitation and procedural history directly from the district court's Opinion and Order denying Petitioner's Petition for Writ of Habeas Corpus.

> This case arises from the shooting death of Michael Connor which occurred during an attempted robbery on March 23, 2001. Petitioner was charged under a theory of aiding and abetting. He was not at the scene when the shooting occurred. His liability as a conspirator rested on the events preceding the crime and on the events in the aftermath of the crimes.
>
> The prosecution presented evidence that Petitioner was a drug dealer who claimed that Connor, also a drug dealer, owed him a large sum of money. Jeremiah Brooks, a co-defendant in the case, testified that Petitioner, who was on a tether at the time of the incident, arranged for Eladio Nino and Patrick Bates, also co-defendants, to take money and drugs from Connor at his home. Because Brooks was working off a debt he owed Petitioner, he was enlisted as the lookout. Brooks testified that Petitioner assured him that the robbery would not be reported. Brooks also said that Petitioner was aware that one of the men was carrying a taser and that he [Petitioner] offered them a gun as well. According to Brooks, Petitioner instructed the men to wait until a Taurus, which was actually a Sable, left Connor's driveway before entering the residence.
>
> Subsequently, at approximately 7:00 a.m., on March 23, 2001, Nino, Bates, and Brooks parked Nino's black SUV at the end of Connor's driveway. All three men were armed. Brooks testified that one of the weapons used by the men belonged to Petitioner. After the Sable left the driveway, Nino attempted to enter the front door while Bates and Brooks went to the side door. Finding the door locked, Brooks knocked. When Connor answered, Bates punched Connor in the face and chased him into the house. Bates struggled with Connor, hitting him on the head with his gun while Connor fought back with a small baseball bat. Ultimately, Bates shot Connor in the head. Bates and Brooks then ran back to the vehicle, followed by Connor's father and brother who were awakened by the gunshot. The men entered the SUV and drove off.
>
> After parking the SUV at an apartment complex, burying their weapons in a field and hiding behind a nearby party store, the men called Petitioner for a ride. Because Petitioner could not leave his home, he sent his girlfriend, Dina Kellums, to pick them up. About two to four weeks later, Petitioner accompanied the others to

2

retrieve the buried weapons. Upon Nino's instruction, Brooks threw the shells and a bullet casing from the murder weapon over a bridge. Subsequently, Petitioner destroyed the murder weapon. Nineteen months passed before any of the men were arrested for their roles in the attempted robbery and murder of Connor.

Within a day of the shooting, Connor died.

The facts surrounding the actual attempted robbery and murder and the subsequent cover-up were not in dispute.

     * * *

During the nine-day trial, the prosecution presented a plethora of evidence regarding the robbery and the homicide, and there was no dispute between the prosecution and the defense over what had occurred during the commission of the offenses or who participated.

After the close of proofs and closing arguments by counsel, the trial court instructed the jury. The defense requested an instruction which would draw a distinction between the criminal liability of Petitioner as an aider and abettor and his lack of criminal liability for the charged offenses if the jury were to find that he was only an accessory after the fact. The trial court denied the request. After the necessary instructions were given, defense counsel indicated that he was satisfied with the instructions as given.

Following, the jury found Petitioner guilty as charged. On July 31, 2003, the trial court sentenced Petitioner as stated.

Subsequently, Petitioner, through counsel, filed an appeal as of right in the Michigan Court of Appeals, raising the following claims:

I. As a matter of law, there was insufficient evidence of intent to support the [Petitioner's] conviction for felony murder when the homicide was outside of the scope of the common criminal plan and was the unforeseen and unanticipated result of an attempted robbery.

II. The admission of the hearsay testimony of Mr. Broome, reporting the alleged statement of co-defendant Bates which tended to incriminate the [Petitioner], denied the [Petitioner] the right to confront the witnesses offered against him.

III. The trial court erred in failing to instruct the jury that if they found that the [Petitioner] aided and abetted the perpetrators only after the commission of the crime, they must find the [Petitioner] not guilty.

IV. The trial court erred in failing to instruct the jury on imperfect self-defense when that defense was well supported by the evidence and would have addressed an essential factor in the determination of whether [ ] felony-murder liability should attach.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences on March 15, 2005. *People v. Morgan*, No. 250437, 2005 WL 599714 (Mich.Ct.App. Mar.15, 2005) (unpublished) (Cooper, J ., dissenting).

Petitioner then filed an Application for Leave to Appeal from that decision in the Michigan Supreme Court, raising the same claims as raised in the Court of Appeals. The Michigan Supreme Court denied the Application on January 30, 2006.

*People v. Morgan*, 474 Mich. 1024, 708 N.W.2d 401 (2006) (Cavanagh, J., would grant leave to appeal). Petitioner did not file a Writ of Certiorari with the United States Supreme Court.

Petitioner filed his "Petition for Writ of Habeas Corpus" [dkt. # 1], on March 22, 2007, raising the following claims:

I. The Petitioner's right to confrontation of the witnesses against him as articulated in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) and *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) was violated by the admission of the co-defendant's statements against the accused.

II. Petitioner was convicted on insufficient evidence as defined in *Jackson v. Virginia*, 443 U.S. (1979) where the State failed to demonstrate the existence of factors for first-degree murder as articulated by the Michigan Supreme Court in *People v. Aaron*, 409 Mich. 672, 727-29, 299 N.W.2d 304 (1980).

III. The trial court violated [Petitioner's] right to a fair [trial] by giving confusing and materially incorrect instructions on accessory after the fact liability in violation of [Petitioner's] right to a fair trial. *United States v. Tarwater*, 308 F.3d 494 (6th Cir.2002); *Taylor v. Withrow*, 288 F.3d 846 (6th Cir.2002); *United States v. Newcomb*, 6 F.3d 1129 (6th Cir.1993).

IV. [Petitioner] also argues that his right to a fair trial was violated when the trial court did not instruct the jury on the defense of imperfect self-defense.

R. 8, 2-3, 7-9.

Of the four grounds for relief asserted before the district court, only one is relevant to the case in its current posture before this Court. As implicated in this appeal, Morgan reasserted the claim he made in his state-court appellate proceedings that the jury instruction given by the state trial court regarding aiding and abetting was confusing and erroneous. The district court determined that this claim was barred by procedural default because Morgan had failed to object to the instruction at trial. After rejecting Morgan's claimed instructional error and denying his petition for habeas corpus, the district court, upon a motion by Morgan, issued a Certificate of Appealability solely on the asserted error regarding the incorporation of the accessory-after-the-fact definition in the jury instruction on aiding and abetting. Morgan timely appealed.

4

## II.

Morgan's sole claim on appeal asserts that the district court erred in denying his petition for habeas corpus based upon a finding that he failed to preserve his claimed error regarding the jury instruction on aiding and abetting given by the trial court and was therefore procedurally defaulted from relying upon such alleged error in his petition for habeas relief.

### A.      Standard of Review

In a habeas corpus appeal, we review a district court's legal conclusions de novo and its findings of fact for clear error. *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir.1999). The standard of review for state-court determinations, however, is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified at 28 U.S.C. § 2254(d). *Dyer v. Bowlen*, 465 F.3d 280, 284 (6th Cir. 2006). Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Whether a petitioner's federal habeas claim is barred under the procedural default rule is a question of law we review de novo." *Abela v. Martin*, 380 F.3d 915, 922 (6th Cir. 2004) (citing *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir.1991)). The United States Supreme Court explains the doctrine of procedural default as follows:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### B.      The State Court Proceedings

#### 1. Trial Proceedings

As noted above, during the trial proceedings, Morgan sought to have the court instruct the jury on the difference between the charge of aiding and abetting, on the one hand, and that of accessory after the fact, on the other.  The record[1] indicates that, as initially requested, Morgan asked for the following instructions:

> THE COURT:
> ...
> The court will make a record of it at this point.  The request specifically is that you must decide if the defendant is guilty of stated principle offense as an aider and abettor; (2) if the Prosecutor have proven beyond a reasonable doubt that before [or] during the stated offense the defendant gave his or her encouragement or assistance intending to help another commit the crime, then you must find the defendant guilty of aiding or abetting the crime; and (3) the Prosecutor has proven beyond a reasonable doubt that if the prosecutor has proven beyond a reasonable doubt the defendant knew about the stated offense and helped that person who committed it avoid discovery, arrest, trial or punishment after the crime ended then the defendant is an accessory after the fact and you may not find him guilty of aiding and abetting the crime and your verdict must be guilty.

R. 7-22, at 6.

---

[1]Typographical, punctuation, and grammatical errors appearing in the quoted material from the transcripts appear as in the originals.

The court concluded that the portion of the requested instruction appearing under (3) was misleading and confusing and therefore declined to give the instruction as initially requested. Defense counsel the requested the following modification:

> MR. SORISE:
>  . . .
> Let me read the modification . . . .
> So paragraph three essentially reads the same as paragraph two, but with not. So it reads this way; if the prosecutor has not proven beyond a reasonable doubt that before or during the, and you state the principle offense there, the defendant gives his encouragement or assistance intending to help another commit that crime, then you may not find defendant guilty of aiding and abetting the crime.
> And I add a fourth paragraph so the jury will know what the distinction is even though the charge is not here. And the distinction is; a person who knew about, and again you state the principle offense, and helped those who committed it avoid discovery, arrest, trial or punishment after the crime ended is an accessory after the fact and you may not find him guilty of aiding and abetting the crime. And it goes on to say as the last paragraph is, and your verdict must be not guilty.

R. 7-22, at 7.

Again the trial judge declined to accept the proposed jury instruction because the judge found it confusing and misleading. Defense counsel then asked whether he would be permitted to submit a defense theory "that if [Morgan] didn't help before, he can't be found guilty as an aider and abettor." R. 7-22, at 10. In response, the court stated that defense counsel would be permitted to make that argument to the jury but that the jury instruction requested by defense counsel was misleading: "This is what the court objects to. The language that says; look, if you find that he didn't do anything to help until after the fact, then you you've got to find him not guilty. That's misleading." R. 7-22. Throughout these exchanges, the court referred multiple times to the instructions relating to conspiracy and stated that those instructions adequately addressed defense counsel's concerns. R. 7-22, at 9-11.

7

The court further stated: "[I]f you want, you can have paragraphs one and two which sufficiently state; if the prosecutor has proved beyond a reasonable doubt before or during the stated offense the defendant gave his assistance, then you may find him guilty of an aider and abettor–but rest of this is very, very confusing especially three. Then you may not find the defendant guilty from aiding and abetting th crime. You're just restating what's already been stated." R. 7-22, at 11.

Defense counsel again attempted to persuade the court to include an instruction making a distinction between aiding and abetting and accessory after the fact: "Judge, I'm trying to give the jury which is a legitimate instruction in the standard jury instructions a distinction between aiding and abetting and accessory after the fact." R. 7-22, at 11. To this statement, the court responded, "If you want a distinction, sir, this is very simple then. You state what aiding and abetting is and you state what the law is on accessory after the fact. But you don't state one that says then he's not guilty." R. 7-22, at 11.

Defense again asked if he could have an instruction: "[W]hat I want to put before the jury, if the court please, is a distinction between aiding and abetting and accessory after the fact so that I may argue to the jury, whether they accept it or not[,] that the only involvement here was after the fact and he shouldn't be held liable for aiding and abetting before." R. 7-22, at 12. After several more exchanges among defense counsel, the prosecutor, and the court, the following series of exchanges occurred:

> THE COURT: Well, its states that an accessory after the fact and this is 8.6. Accessory after the fact is a person who with knowledge of the other person's guilt gives assistance to a felon in an effort to hinder the felon[']s detection, arrest, punishment or trial. And that's what the definition is.
> *So why not just give the definition of accessory after the fact.* That is found in the commentary section of accessory after the fact because he's not charged with being an accessory after the fact. It's just confusing.

8

MR. SORISE: At that point the court could indicate to the jury that's not one of the charges in the case, but it should be known for evaluation of the evidence.

MR. JANSEN [prosecuting attorney]: *I would say that this court just wants to define a term for you that you've heard in this case.*

MR. SORISE: *That's good too.*

By way of confirmation, the court stated: "So we've already defined what 8.1 which is aiding and abetting. And then 8.6 the court will give a definition on accessory after the fact, the one that was just stated."

At trial, the court gave the following instruction to the jury:

"The defendant in this case is charged with committing first degree felony murder or assault with intent to rob while armed or intentional [sic] assisting someone else in committing a crime is as guilty as a person who directly commits it and can be convicted of the crime as an aider and abettor.

"To prove this charge the Prosecution must prove the following elements beyond a reasonable [sic] or beyond a reasonable doubt. And this goes to aiding and abetting. First that the alleged crime was actually committed either by the defendant or someone else. It does not matter whether anyone else was convicted of that crime.

"Second that before or during the crime, the defendant did something in the commission or to assist in the commission of that crime, and third the defendant must have intended the commission of the crime alleged or must have known that the other person intended its commission at the time of giving the assistance.

"Ladies and gentlemen, the court will define for you accessory after the fact because there is testimony that may give you reason to consider accessory after the fact and the parties have asked for this instruction. The court is going to give you a definition at this point.

"An accessory after the fact is defined as follows: Access after the fact is a person who with knowledge of the other persons guilt gives assistance to a felon in an effort to hinder the felons detection, arrest, trial or punishment.

"Now ladies and gentlemen as far as mere association. Mere association even with the knowledge that a crime was planned or was committed is insufficient to establish the defendant Mr. Morgan aided or assisted in the commission of that crime.

"Now it does not matter how much help, advice or encouragement Mr. Morgan gave; however, you must decide whether Mr. Morgan intended to help another commit the crime and whether his help advice or encouragement actually did help, advise or encourage the crime."

R. 7-23, at 46-48.

9

After reading all of the instructions to the jury, the court inquired whether the prosecutor was satisfied with the jury instructions. The prosecutor answered affirmatively, at which point defense counsel asked for a sidebar and raised two objections. Neither objection related to the instructions given for aiding and abetting and accessory after the fact. R. 7-23, at 61-64. The trial court addressed the objections, and then again asked the prosecutor whether he was satisfied with the instructions. Both the prosecutor and defense counsel affirmatively stated that they were satisfied. R. 7-23, at 65.

### 2. *State Appellate Proceedings*

On direct appeal to the Court of Appeals of Michigan, Morgan asserted several errors by the trial court, only one of which he has raised before this Court. As relevant to the appeal before this Court, Morgan argued to the Michigan appellate court that the trial court had erred in giving an erroneous and confusing jury instruction on accessory after the fact. *People v. Morgan*, No. 250437, 2005 WL 599714, at *5 (Mich. Ct. App. March 15, 2005). Under Michigan law, "[a] person may not be convicted of aiding and abetting in the commission of a crime based on his conduct as an accessory after the fact." *Id.* at *5 (citing *People v. Lucas*, 262 N.W.2d 662, 663-64 (Mich. 1978)). In his direct appeal, Morgan contended that the trial judge confused the jury by failing to instruct them that, under Michigan law, accessory after the fact is a separate and distinct criminal offense from the offense of aiding and abetting. *Id.* at *5. In Morgan's view, the instructions that the trial court gave allowed the jury to infer that a person who acts as an accessory after the fact may be found guilty of aiding and abetting.

The Michigan Court of Appeals rejected Morgan's argument under a plain-error standard of review. *Id.* at *5; n. 23 (citing *People v. Carines*, 597 N.W.2d 130, 138-39 (Mich. 1999)). In

rejecting Morgan's argument, the court first noted that defense counsel had not only failed to object to the accessory-after-the-fact instruction, but had also indicated his satisfaction with the instructions as given. *Id.* at \*5 and n. 22. The court then stated that the failure to object limited review to determining whether the trial court committed plain error affecting substantial rights. *Id.* The court of appeals proceeded to find that the trial court had not committed any plain error because the lower court "did not affirmatively instruct the jury that accessory after the fact was an alternative method of establishing that a defendant aided and abetted in the commission of a crime." *Id.* The appellate court also concluded that defense counsel's own proposed instructions were confusing, that the trial court properly rejected those proposed instructions, and that the trial court provided correct instructions concerning the prosecutor's burden of proof. *Id.*

Morgan filed an application for leave to appeal to the Supreme Court of Michigan. That court declined to hear the appeal. *People v. Morgan*, 708 N.W.2d 401 (Mich. 2006). Morgan thereafter filed a § 2254 habeas petition in the United States District Court for the Eastern District of Michigan.

## C.     The District Court Habeas Proceedings

In his habeas petition, Morgan originally alleged four grounds for relief, only one of which he pursues on appeal to this Court. As relevant to this appeal, Morgan reasserted the claim he made in his state-court appellate proceedings regarding the aiding and abetting jury instruction given by the state trial court, which he contends was confusing and erroneous. The district court determined that this claim was barred by procedural default because Morgan had failed to object to the instruction at trial and the Michigan Court of Appeals had therefore reviewed only for plain error. The district court concluded that, because of Morgan's failure to object at trial and the plain-error review by the Michigan Court of Appeals, Morgan's habeas petition could proceed on the merits

11

only if Morgan demonstrated cause and prejudice or demonstrated that failure to consider the claims would result in a fundamental miscarriage of justice. R. 8, at 17-19. The district court concluded that Morgan had not shown cause for the failure to object because he had not alleged ineffective assistance of counsel. Thus, Morgan had failed to meet the "cause-and-prejudice" prong necessary to overcome the procedural default bar.

As the district court recognized, however, a petitioner may nevertheless overcome the procedural default bar if he shows that failure to consider the claims would result in a fundamental miscarriage of justice: "Application of the cause-and-prejudice bar may be avoided if a petitioner 'presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent.'" R. 8, at 18 (quoting *Rust v. Zent*, 17 F.3d 155, 162 (6th Cir.1994)). In this regard, the district court stated:

> The Supreme Court has held that application of the "miscarriage of justice" exception to the procedural default rule should apply only to cases where there is a likelihood of convicting a person who is actually innocent. *Schlup[ v. Delo*, 513 U.S. 298, 321 (1995)]. " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has not done so here. In fact, Petitioner has pointed to no new evidence that the jury was not given. Therefore, his procedural default will not be excused on this ground.

R. 8, at 19.

### III.

The district court correctly determined that Morgan's jury-instruction claim is barred by procedural default. The procedural default rule applies to prevent review of a state prisoner's federal

constitutional claims when the following four elements are present: (1) the petitioner failed to comply with a state procedural rule that is applicable to his claim; (2) the state courts based their decisions on the procedural rule; (3) the procedural rule is an adequate (i.e., firmly established and regularly followed) and independent state ground on which the state can rely to foreclose federal review; and (4) the petitioner does not show cause and prejudice or does not show a miscarriage of justice. *See Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986).

In this case, Morgan contends that the district court erred in applying the procedural default rule. According to Morgan, both the district court and the Michigan Court of Appeals "failed to consider the extensive record of argument regarding these instructions that was made prior to the jury being charged," and instead incorrectly focused only on Morgan's failure to make a contemporaneous objection at the time the jury instructions were read to the jury. Morgan also argues that the procedural default rule does not apply because Michigan courts do not consistently and uniformly follow it. *See People v. Shirk*, 174 N.W.2d 772, 780 (Mich. 1970) ("[T]his Court, in the exercise of supervisory control over all litigation, has often asserted the right to consider manifest and serious errors although objection was not made by the party who appeals."); *People v. Wynn*, 194 N.W.2d 354, 363 (Mich. 1972) ("[W]hen the court is satisfied that the record shows that a manifest injustice has been done, it will overlook noncompliance of counsel with the rules of practice."). Finally, Morgan contends that it would have been "pointless and futile" to object to the jury charge after his defense counsel had vigorously argued that the instruction should include a statement advising the jury that Morgan could not be found guilty of aiding and abetting if they found that he gave assistance only after the commission of the crime, and that, moreover, he was not required to

do so. Morgan invokes Michigan statutory law for the proposition that he was not required to renew his objection during the jury charge.[2]

These contentions lack merit. The record, as discussed in detail above, unequivocally demonstrates that defense counsel not only failed to object to the jury instruction on aiding and abetting as it was given, but in fact helped to draft the final instruction and affirmatively expressed his approval.[3] However true it may be that defense counsel would not have been required to lodge an exception to an overruled objection to a jury instruction had he made such an objection, that argument is inapplicable to the facts of this case, as defense counsel never objected to the way the

---

[2]Under Michigan law, "[i]t shall not be necessary in any criminal suit, action or proceeding in any court of record, to except to the charge given to the jury, or to the refusal to give any charge requested by either of the parties to such suit, action or proceeding, but any party aggrieved by any such charge or refusal to charge, may assign error upon such charge or refusal to charge in his assignments of error, the same as if exception had been made to such charge or refusal to charge." Mich. Comp. Laws, § 768.30. This statute refers to the taking of exceptions as opposed to objecting to a particular jury instruction.

[3]Although the district court found Morgan's jury-instruction claim forfeited by procedural default for failure to object, the district court could just as easily have rejected the claim on the basis of waiver. Waiver and forfeiture are distinct legal constructs. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Unlike forfeiture, which permits review for plain error, waiver extinguishes appellate review. *Olano*, 507 U.S. at 733. When one knowingly waives his charged error, that challenge is forever foreclosed, and cannot be resurrected on appeal. *See United States v. Saucedo*, 226 F.3d 782, 787 (6th Cir. 2000), *cert. denied*, 531 U.S. 1102 (2001). Here, defense counsel actively participated in the drafting of the accessory-after-the-fact instruction and affirmatively approved its inclusion within the instruction on aiding and abetting, including the location of its placement therein. At the jury charge, after the trial court made changes requested by defense counsel and unrelated to the issues on appeal, defense counsel affirmatively stated that he was satisfied with the instructions as given.

In light of the extensive exchanges between the court and counsel for both parties, defense counsel's assistance in drafting the instruction that the trial court ultimately gave, and defense counsel's expressed satisfaction with the instruction, Morgan, through his counsel, affirmatively told the district court that he had no objection to it. Thus, Morgan intentionally relinquished or abandoned a known right to object to the jury instruction on aiding and abetting.

trial court ultimately incorporated Morgan's requested instruction on aiding and abetting. Furthermore, the Michigan Court of Appeals, which was the last court to render a decision on the issue, based its denial of relief on defense counsel's failure to object to the challenged jury instruction, and, therefore, reviewed Morgan's claim only for plain error. In reviewing Morgan's claim for plain error, the Michigan Court of Appeals followed the longstanding practice in that state of requiring a showing of "manifest injustice" resulting from counsel's failure to object below to a claimed error on appeal. Thus, Morgan's averments to the contrary notwithstanding, the procedural rule requiring objection below to preserve an issue on appeal is both firmly established and regularly followed by Michigan state courts. *See Carines,* 597 N.W.2d at 138-39; *Wynn*, 194 N.W.2d at 363. Accordingly, the procedural rule is an adequate and independent state ground on which the State can rely to foreclose federal review of Morgan's claim. *See Lancaster v. Adams*, 324 F.3d 423, 437 (6th Cir. 2003); *Hamilton v. Jackson*, 416 F. App'x 501, 505 (6th Cir. 2011). Finally, we agree with the district court that Morgan has not attempted to show cause and prejudice by alleging ineffective assistance of counsel, nor or has he attempted to show a miscarriage of justice by alleging actual innocence. *See Schlup*, 513 U.S. at 321; *Bousley,* 523 U.S. at 623. In sum, based upon a de novo review of Morgan's claims, we conclude that the district court properly denied Morgan's petition for a writ of habeas corpus.

## IV.

The judgment of the district court is **affirmed**.