NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0953n.06

No. 10-1304

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 29, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| NORMAN ALLEN, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| SHIRLEE HARRY, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

Before: GIBBONS, ROGERS and COOK, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Petitioner-appellant Norman Allen appeals the dismissal of his 28 U.S.C. § 2254 petition for writ of *habeas corpus* seeking relief from both his convictions and resulting sentences for second degree murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. For the reasons that follow, we affirm the judgment of the district court and deny Allen's petition.

I.

A.

Allen was charged with first degree murder, possession of a firearm during a felony, and possession of a firearm by a felon. Allen waived his right to a trial by jury. A three-day bench trial in Wayne County Circuit Court commenced on January 16, 2001, where the following facts were introduced.

-1-

On March 23, 2000, at approximately 9:30 p.m., Detroit police officers responding to a call arrived at 3242 Lothrop where they encountered Willie Lee Perry who told them that his friend had just been shot. Officers found the body of an injured and unconscious male in the alley behind the home. The victim was subsequently identified as Joe Louis Swanigan, who had been fatally shot in the back. Other police officers who had also responded received permission to search the home. The officers observed several spent .30 caliber shell casings on the front porch of the home. In the basement of the home, the police found an empty Winchester .30 caliber carbine box. Further police investigation failed to recover any fingerprints from the recovered shell casings; however, testing confirmed that the spent casings were all fired from the same weapon.

Perry testified that on March 23, 2000, he drove to the Lothrop house, picked up some people, and left for Belle Isle. A woman who went by the name Monique rode along with Perry in his Ford Explorer. After partying on Belle Isle, Monique and her cousin Sean accompanied Perry to a store where Perry went inside to buy some juice. Perry left Monique and Sean in the Explorer while he went into the store, and when he returned, his vehicle was gone. After finding himself without his vehicle, Perry walked down the street to the location where he had seen the car of his friend, Swanigan. Perry asked Swanigan to drive him over to Lothrop so that he could recover his vehicle. After the two men arrived at the Lothrop house, Perry went onto the porch to ask for Monique. Perry testified that while he was on the porch, a group of women exited the house, including Monique. After Monique denied doing anything with his vehicle, Perry grabbed her and pinned her up against the house. The women then began yelling at Perry and hitting him. Perry testified that Allen came out of the house and hit him in the eye, causing Perry to fall down the stairs

of the porch. After Perry extricated himself from the fight, while he was standing at the front of the porch explaining that he was merely seeking to recover his keys and his vehicle, he saw Allen go into the house and return four or five minutes later carrying a rifle. Perry testified that Allen "came out the door with the rifle, went towards the center of the porch," and said "What's up?" and that Allen then "fired some shots in the air." Perry testified that when shots were fired, Swanigan was down by the sidewalk alongside his car. When shots were fired, Perry ran between nearby houses but testified that he heard Swanigan say "Look man, all I —all we wanted was my man's keys back." Perry did not know to whom Swanigan was speaking. Perry then heard another voice say "That's all you want?" two times and then heard more gunshots. An injured Swanigan then came back to the area where Perry was between the nearby houses and fell across the gate. Perry testified that the second voice that he heard sounded like Allen.

At trial, several of the witnesses testified that they had been intimidated by the police officers who questioned them about the shooting.[1] Allen's counsel did not object to the introduction of the witnesses' prior statements made to police at trial. Kennyatta Morrow testified that the police officers who questioned her on the night of the shooting were "hollering" at her and threatened to "put [her] in juvenile" if she did not talk to them. Morrow stated that she was also scared of the

---

[1]Gregory Patrick also testified that although he did not answer any questions posed by the police, the police made him sign a statement by pushing his fingers back and applying pressure behind his ears. However, Patrick testified at trial that he was not present at the Lothrop home on the night of the murder, and there was no reference to the contents of his statement.

officers because "[t]hey was hitting on that girl Kay."[2]  Morrow stated that she told the police

officers what she thought they wanted to hear but also testified that what she told the police officers

was a true statement of what occurred on the night of the shooting.  She testified that Allen was

living at 3242 Lothrop and that he was often at the home.  Morrow also acknowledged that in a prior

signed statement to police she had stated that Allen rented out the basement of the home.  Morrow

testified that she was sitting in the dining room of the home listening to the radio and saw Allen go

into the basement, come back up from the basement, and walk towards the front door of the house

shortly before she heard shooting.

Rosie Walker testified that she saw Allen upstairs in the house right before the shooting.

However, she also admitted to having signed a statement given to the police that stated that Allen

went into the basement, came back upstairs with a gun, and went onto the porch and started shooting.

Walker testified that she signed the statement because the police threatened to lock her up in jail and

take her keys and because she had heard the police "smacking up Sally."  Walker admitted that most

of the signed statement was true but denied that she saw Allen go into the basement and return with

a gun.

Sallie Jackson testified at trial that she saw Allen come out of the house and join the group

beating up Perry.  Jackson testified that she saw Allen leave the fight after a woman named Nikki

said "go get the gun" and that Allen returned about five minutes later with a gun which he then shot

into the air twice.  Jackson then ran around the side of the house where she heard three more

---

[2]Kay was a name used by Sallie Jackson (who is also referred to at times in the trial transcript as Sallie Johnson), who was also at the Lothrop house on the night of the shooting.

gunshots but could not see the shooter. Jackson also testified, however; that after Allen fired the gun into the air she looked back after running away and hearing more gunshots and saw Allen holding a gun. After the shooting stopped, Allen told Jackson to go into the house. When Allen came back into the house she did not see him carrying a gun. She also testified that a Detroit police officer had slapped her twice when she was brought in for questioning. Jackson stated that the mistreatment did not cause her to change her statements or to say anything that was untrue.

At the conclusion of the bench trial, the court found Allen guilty of second degree murder, possession of a firearm during the commission of a felony, and possession of a firearm by a felon. Allen was sentenced to twenty-four to forty-five years for the second degree murder conviction, two to five years for the felon in possession of a firearm conviction, and a mandatory two years for the possession of a firearm in the commission of a felony conviction.

B.

Allen appealed his conviction to the Michigan Court of Appeals. Allen raised three claims of error: denial of due process due to law enforcement's intimidation of witnesses, which resulted in the making of false statements that were used by the prosecution at trial; denial of a fair trial and right to present a defense due to the trial court's refusal to admit a letter written by the defendant prior to trial, which was to be used as a prior consistent statement; and error due to the prosecutor's injection of evidence regarding the defendant's decision to invoke his right to remain silent. Allen then filed a motion for remand on the grounds that newly discovered evidence would likely cause a different result at trial. The motion for remand was denied on June 3, 2002. On November 19, 2002, the Court of Appeals affirmed Allen's convictions and sentence. *People v. Allen*, No. 233206,

2002 WL 31934025 (Mich. Ct. App. Nov. 19, 2002) (*per curiam*).  With regard to Allen's due

process claim regarding witness intimidation by law enforcement and use of the witness statements

by the prosecution at trial, the Michigan Court of Appeals first found that the "issue was not

preserved for appeal" and accordingly evaluated the claim under the plain error rule set forth in

*People v. Carines*, 597 N.W.2d 130 (Mich. 1999), which requires that a defendant demonstrate that

the error was clear or obvious and "affected his substantial rights by prejudicing the outcome of the

proceedings."  *Allen*, 2002 WL 31934025, at *1.   The court then stated:

> It is improper for a prosecutor or police to intimidate witnesses in or out of court.  Here, the record reveals that while the police were interrogating a witness they "hollered" in her face and threatened to send her to a juvenile detention center if she did not talk.  Another witness testified that she was slapped twice and that the police officers treated her very harshly and called her a "lying bi* * *."  Another witness testified that the police bent his fingers back and pushed on the pressure points behind his ears to get him to talk to the police.

> We clearly do not condone the way the witnesses were treated.  However, defendant has failed to establish how the outcome of the proceedings was prejudiced by the way the witnesses were treated. . . . [A]ll three of these witnesses were able to take the stand and testify to their version of the events that occurred the evening in question.  The record does not indicate that any of the witnesses seemed hesitant at trial to testify.  Credibility of the witnesses is a matter for the trier of fact to ascertain.

> Moreover, other evidence corroborated the testimony of the witnesses. Defendant admitted to renting the basement and selling drugs out of the house.  Two police officers found an empty Winchester .30 carbine box and suspected crack cocaine in the basement of the house.  Additionally, two officers observed five spent .30 caliber shell casings on the front porch, and a lab report determined that all five spent shell casings were fired from the same weapon.  Another witness testified that he saw defendant come out of the house with a rifle.  Perry heard the victim say, "look man, all I-all we wanted was my man's keys back," and then heard a voice that sounded like defendant's voice answer twice, "That's all you want?"  The witness then heard three more gunshots come from the house and further testified that the gunshots he heard sounded like the gunshots that defendant fired in the air.

> Moreover, the witness picked defendant out of a photographic line-up at the police station as the shooter.
>
> Circumstantial evidence and reasonable inferences arising from the evidence are sufficient to establish the elements of second-degree murder. Therefore, defendant was not denied his substantial rights because there was overwhelming evidence presented at trial to establish that defendant fired the shots that killed the victim.

*Id.* at *1–2 (internal citations and footnote omitted).

Allen did not file a timely appeal of the Court of Appeals's decision to the Michigan Supreme Court. However, on January 10, 2003, Allen filed a *pro per* Delayed Application for Leave to Appeal with the Michigan Supreme Court. Allen requested review of the same three claims raised in his appeal to the Michigan Court of Appeals and raised an additional claim alleging that he was denied his right to trial by jury because he was induced to waive his right to a jury trial based on promises that a statement he made to police would not be introduced. The Michigan Supreme Court denied Allen's delayed application for leave to appeal on May 30, 2003, because it was not persuaded that the questions presented should be reviewed.

C.

Allen subsequently pursued post-conviction relief in state court. He filed a motion for relief from judgment with the Wayne County Circuit Court. The motion requested relief on the grounds that Allen was denied his right to a fair trial because the prosecution improperly questioned him regarding the credibility of other witnesses, trial counsel rendered ineffective assistance because he failed to interview and subpoena certain witnesses, and appellate counsel rendered ineffective assistance for failing to make raise the prior arguments, which provided the "good cause" necessary

to excuse his failure to raise the issues in his prior appeal.[3] The court denied the motion on January 31, 2006, finding that Allen failed to satisfy the "good cause" requirement of Michigan Court Rule 6.508(D)(3)(a).

Allen then filed a delayed application for leave to appeal the denial of his motion for relief from judgment with the Michigan Court of Appeals. The Court of Appeals denied the motion on the grounds that Allen failed to establish his entitlement to relief under Michigan Court Rule 6.508(D). Allen then filed an application with the Michigan Supreme Court for leave to appeal the Michigan Court of Appeals's decision denying him leave to appeal. Allen raised three issues in his application: (1) denial of due process and a fair trial due to the prosecution's elicitation of comments from Allen regarding the credibility of witnesses and the prosecution's failure to list *res gestae* witnesses, (2) denial of effective assistance of counsel due to trial counsel's failure to investigate, to call witnesses, and to object to trial errors,[4] and (3) denial of effective assistance of appellate counsel due to counsel's failure to raise the above two claims regarding the prosecution's elicitation of comments on witness credibility and failure to list *res gestae* witnesses and the ineffective assistance of trial counsel due to the failure to investigate, call witnesses, and object to errors at trial.

---

[3]It appears that Allen's motion for relief from judgment is not included in the record. The record instead contains the trial court decision denying the motion and Allen's description of the motion, which was included with his delayed application for leave to appeal the order denying his motion for relief from judgment.

[4]The claim that trial counsel was ineffective for failing to object to trial errors was not addressed in the trial court decision denying Allen's motion for relief from judgment. It is unclear if this claim was included in the motion, which as noted above does not appear to be part of the record, or if it was first included in Allen's delayed application for leave to appeal the denial of the motion for relief from judgment.

The Michigan Supreme Court denied his application on September 10, 2007.

D.

After failing to obtain relief in state court, Allen filed a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254. Allen's *habeas* petition presented four grounds for relief: (1) the denial of due process and right to a fair trial due to misconduct by the police and prosecution relating to the intimidation of witnesses and the use of the statements obtained as a result of the police intimidation at trial, the failure of the prosecution to list *res gestae* witnesses, and the elicitation of Allen's comments on the credibility of witnesses (referred to by the district court as the "prosecutorial misconduct claim"); (2) the denial of the due process right to present a defense; (3) the denial of effective assistance of trial counsel; and (4) the denial of effective assistance of appellate counsel.

The district court found that Allen had procedurally defaulted his prosecutorial misconduct and ineffective assistance of trial counsel claims. The district court found the prosecutorial misconduct claim defaulted because Allen failed to contemporaneously object to the misconduct at trial. The ineffective assistance of trial counsel claim was procedurally defaulted because Allen did not raise it on direct appeal but instead raised it for the first time in his motion for relief from judgment. The district court noted that Allen argued that ineffective assistance of his appellate counsel provided cause to excuse his procedural default. As a result, the district court considered the merits of Allen's claims because it found that the cause and prejudice analysis merged with an analysis of the merits of the defaulted claims. The district court ultimately denied *habeas* relief.

This court granted Allen's application for a COA on February 4, 2011, as to the following issues:

a) whether Allen was deprived of a fair trial and due process because the police coerced statements from witnesses and the prosecution introduced the statements at trial; b) whether trial counsel rendered ineffective assistance by failing to object [to] the prosecution's use of the coerced witness statements; c) whether appellate counsel rendered ineffective assistance by not raising the issues of whether Allen was deprived of due process through the introduction of the coerced witness statements[5] and of whether trial counsel rendered ineffective assistance by not objecting to the prosecution's introduction of the coerced witness statements; and d) whether Allen procedurally defaulted the claims pertaining to the coerced statements and trial counsel's failure to challenge them.

(CA6 docket, order of 2/4/2011, at 3.)

II.

We review a district court's dismissal of a *habeas* petition brought pursuant to 28 U.S.C. § 2254 *de novo*, but the district court's factual findings are reviewed for clear error. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (*en banc*). "We review the district court's procedural default rulings de novo." *Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011).

III.

A.

Allen filed his *habeas* petition in December 2007, so the substantive and procedural standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became effective on April 24, 1996, govern this court's review. *See Allen v. Yukins*, 366 F.3d 396,

---

[5]This portion of the COA appears to have been granted in error. Allen's appellate counsel *did* raise the issue of whether Allen was deprived of due process through the introduction of the witness statements in Allen's direct appeal to the Michigan Court of Appeals. Further, in his brief on appeal to this court, Allen focuses his argument regarding ineffective assistance of appellate counsel on his appellate counsel's failure to raise a claim based on (1) trial counsel's failure to *object* to the coerced witness statements and (2) trial counsel's failure to call certain witnesses.

399 (6th Cir. 2004) (citing *Lindh v. Murphy*, 521 U.S. 320, 336 (1997)). Under AEDPA, federal

*habeas* review of state court proceedings is limited. *See, e.g.*, *Lowe v. Swanson*, 663 F.3d 258,

260–61 (6th Cir. 2011); *Otte v. Houk*, 654 F.3d 594, 600 (6th Cir. 2011).

Federal *habeas* review of a petitioner's federal claim may be foreclosed if the claim has been

procedurally defaulted. In general,

> [w]hen a "state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."

*Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Coleman v. Thompson*, 501 U.S.

722, 750 (1991)). "If a state has a procedural rule that prevented the state courts from hearing the

merits of a habeas petitioner's claim, that claim is procedurally defaulted when 1) [the] petitioner

failed to comply with the rule, 2) the state actually enforced the rule against the petitioner, and 3) the

rule is an adequate and independent state ground foreclosing review of a federal constitutional

claim." *Taylor v. McKee*, 649 F.3d 446, 450 (6th Cir. 2011) (internal quotation marks omitted). If

this court determines that "a state procedural rule was not complied with and that the rule was an

adequate and independent state ground, then the petitioner must demonstrate . . . that there was

'cause' for him to not follow the procedural rule and that he was actually prejudiced by the alleged

constitutional error." *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). A petitioner's procedural

default may also be excused if the petitioner demonstrates that a fundamental miscarriage of justice

would result from a failure to consider the claims by demonstrating actual innocence. *See Dretke

v. Haley*, 541 U.S. 386, 388 (2004); *Schlup v. Delo*, 513 U.S. 298, 321–22 (1995).

B.

Allen admits that his "due process claim is procedurally defaulted because his trial counsel failed to contemporaneously object" and that his ineffective assistance of trial counsel claim based on trial counsel's failure to object is also procedurally defaulted "because [it was] not presented to the state courts and [is] likely barred under Michigan procedural rules."[6]  Allen argues that review of his due process claim is nonetheless proper because he is actually innocent.  Allen also argues that even if this court does not find sufficient evidence presented to find him actually innocent, his claims may still be heard because he can establish cause and prejudice to excuse his default.

1.

To establish actual innocence, a petitioner must demonstrate that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S.

---

[6]The district court correctly determined that Allen's due process claim regarding prosecutorial misconduct was procedurally defaulted because Allen failed to object at trial, which resulted in appellate review by the Michigan Court of Appeals under the "plain error" standard of review pursuant to *People v. Carines*, 597 N.W.2d 130, 138–39 (Mich. 1999).  *Allen*, 2002 WL 31934025, at *1.  This court has found that the contemporaneous objection rule is firmly established and regularly followed by Michigan state courts and that the rule serves as an adequate and independent state ground.  *See Taylor v. McKee*, 649 F.3d 446, 450–51 (6th Cir. 2011) ("Michigan's contemporaneous objection rule is both a well-established and normally enforced procedural rule.").  Further, "a state appellate court's plain-error review of a procedurally defaulted claim does not waive the procedural default." *Awkal v. Mitchell*, 613 F.3d 629, 648 (6th Cir. 2010) (*en banc*).  The district court also correctly found that Allen procedurally defaulted his ineffective assistance of trial counsel claim because he failed to raise it on direct appeal and instead raised it in his motion for relief from judgment, which the trial court denied pursuant to Michigan Court Rule 6.508(D)(3), and the Michigan Court of Appeals and Michigan Supreme Court denied leave to appeal the denial, also relying on Rule 6.508(D).  The enforcement of Rule 6.508(D)(3) is an adequate and independent state ground for procedural default purposes.  *See McFarland v. Yukins*, 356 F.3d 688, 697–98 (6th Cir. 2004).

at 327; *see Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To demonstrate actual innocence to excuse his procedural default, a petitioner must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. The reviewing court must consider the new evidence in light of "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks omitted).

In support of his claim of actual innocence, Allen argues that affidavits from Alma Morrow, Kenneth Morrow, and Juantissa Hill are new, reliable evidence in the form of eyewitness accounts that demonstrate that he is factually innocent. Allen submitted the three affidavits for the first time in support of his motion for relief from judgment before the trial court. All three affidavits attest in a sparse fashion that "Norman Allen, aka M.C. Noe or Noe was inside the house when the shooting took place" and that the witnesses spoke with Allen's attorney and told him that Allen did not commit the charged crimes.

Even if Allen's proffered affidavits qualify as new evidence and raise a colorable claim of actual innocence, that is insufficient to pass through the *Schlup* gateway. *See Pudelski v. Wilson*, 576 F.3d 595, 606 n.2 (6th Cir. 2009). The Supreme Court has explained that the *Schlup* standard permits review only in the "extraordinary case." *House*, 547 U.S. at 538 (internal quotation marks omitted). Allen testified at trial that he was not outside at the time of the shooting, and Rosie Walker

-13-

testified that she saw Allen upstairs in the house right before the shooting. The affidavits are thus cumulative of the trial testimony that Allen was not outside at the time of the shooting. Further, the affidavits must be considered alongside the more specific trial testimony of other eyewitnesses, who testified that they saw Allen come up from the basement and go outside with a gun, saw Allen shoot the gun in the air, and heard Allen yelling at Swanigan immediately before shots were fired. Although additional testimony that Allen was inside the house might possibly cause jurors to question the credibility of the witnesses who saw Allen outside the house with a gun, such evidence would not compel a juror to credit only the testimony that placed Allen inside the house and discredit the evidence that placed Allen outside with a gun at the time of the shooting. Further, the affidavits are devoid of detail beyond asserting that Allen was inside the house during the shooting, and as such, lack the necessary "probative force" to establish that they represent new, trustworthy eyewitness accounts that may serve to buttress his claim. *See Schlup*, 513 U.S. at 327–28; *Giles v. Wolfenbarger*, 239 F. App'x 145, 148 (noting that lack of evidence regarding an affidavit's authenticity, the affiant's motivation, and circumstances of the affidavit's execution provided further support for treating a recanting affidavit with caution). As a result, it cannot be said that it is "that it is more likely than not that no reasonable juror would have convicted [Allen] in the light of the new evidence," *Schlup*, 513 U.S. at 327, and Allen therefore cannot excuse the procedural default of his constitutional claims by claiming actual innocence.

2.

We next turn to Allen's second argument for excuse of the procedural default of his claims. In the absence of cause and prejudice we may not reach the merits of Allen's defaulted claims.

*Coleman*, 501 U.S. at 750; *Taylor*, 649 F.3d at 451. Allen attempts to show cause and prejudice by alleging ineffective assistance of trial counsel (for failing to object to the admission of the statements of witnesses whom police mistreated) and ineffective assistance of appellate counsel (for failing to raise trial counsel's ineffectiveness in not objecting to the witness statements). Even if the state has waived part of its procedural default argument, we may raise the issue *sua sponte*. *Palmer v. Bagley*, 330 F. App'x 92, 106 (6th Cir. 2009); *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005). "An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009) (citing *Ege v. Yukins*, 485 F.3d 364, 379–80 n.7 (6th Cir. 2007)). This is because "[t]he latter must meet the higher AEDPA standard of review, while the former need not." *Id.* at 237 (citing *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006)).

To establish ineffective assistance of counsel, Allen must demonstrate that his attorney's performance was deficient and that he was prejudiced by the deficient performance. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance means that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that counsel's representation "fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88. To demonstrate that appellate counsel's performance was objectively unreasonable, Allen must show that "a particular nonfrivolous issue was clearly stronger than issues that counsel did present." *Robbins*, 528 U.S. at 288. "The prejudice analysis for procedural default and the prejudice analysis for the ineffective assistance of counsel argument are sufficiently similar to treat as the same in this

context." *Hall*, 563 F.3d at 237. *Strickland* prejudice is demonstrated by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The prejudice inquiry does not involve a determination of "whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington v. Richter*, 131 S. Ct. 770, 791 (2011). Instead, it requires a determination of whether it is "'reasonably likely' the result would have been different," and requires the "likelihood of a different result . . . be substantial, not just conceivable." *Id.* at 792.

Because both prongs of the *Strickland* test must be satisfied to establish ineffective assistance, if we find that Allen cannot establish either deficient performance or sufficient prejudice, we need not address the other prong. *Strickland*, 466 U.S. at 697. Here, even if we assume that Allen's trial counsel rendered deficient performance by failing to object to the introduction of the witnesses statements, Allen has failed to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The Michigan Court of Appeals rejected Allen's claim that he was denied a fair trial due to the intimidation of witnesses. *Allen*, 2002 WL 31934025, at *2. However, the court made clear that it "d[id] not condone the way the witnesses were treated." *Id.* at *1. Despite its disapproval, the Michigan court ultimately concluded that Allen "failed to establish how the outcome of the proceedings was prejudiced by the way the witnesses were treated." *Id.* "[A]ll three . . . witnesses were able to take the stand and testify to their version of the events . . . [t]he record does not indicate that any of the witnesses seemed hesitant . . . to testify." *Id.* Further, the court found that "other

evidence corroborated the testimony of the witnesses," and that "[c]ircumstantial evidence and reasonable inferences arising from the evidence are sufficient to establish the elements of second degree murder. Therefore, [Allen] was not denied his substantial rights because there was overwhelming evidence presented at trial to establish that [Allen] fired the shots that killed the victim." *Id.* at *2.

The plain error standard under Michigan law that the state appellate court applied is similar to the standard for *Strickland* prejudice. The Michigan Court of Appeals explained that under the plain error rule a defendant must show that the error "affected his substantial rights by prejudicing the outcome of the proceedings." *Id.* at *1 (citing *Carines*, 597 N.W.2d at 138). Correspondingly, we agree with the Michigan Court of Appeals and find that prejudice sufficient to support a claim of ineffective assistance of trial counsel cannot be established on this record.

At trial, the witnesses were extensively questioned about their prior statements and the circumstances surrounding their questioning by police. The witnesses were asked about and were able to correct any discrepancies in their prior statements resulting from any intimidation by police. The Michigan Court of Appeals found that the witnesses "were able to take the stand and testify to their version of the events that occurred [on] the evening in question" and that "the record does not indicate that any of the witnesses seemed hesitant at trial to testify." *Allen*, 2002 WL 31934025, at *1. The court noted that the trier of fact could then assess the credibility of the witnesses. *Id.* In addition, the court found that other evidence corroborated the witnesses' statements. *Id.* at *2. This other evidence which the Michigan Court of Appeals described as "overwhelming," *id.*, independently provided support for the jury's finding. Allen has not established prejudice because,

even if we ignore the challenged statements, additional evidence presented at trial was sufficient to support a finding that Allen was the shooter and therefore guilty of second degree murder. This evidence included testimony that Allen resided in the basement of the Lothrop home where the .30 caliber carbine box was found and that spent .30 caliber shell casings—which police determined were all fired from the same gun—were collected from the front porch of the Lothrop home. In addition, Allen was seen coming out of the house holding a gun and then firing a gun in the air, and he was heard speaking to Swanigan immediately before the fatal shots were fired. In light of the record before us, we cannot conclude that there is a reasonable probability that a sustained objection to the introduction of the challenged witnesses statements would have led to a different outcome at trial. Allen was therefore not prejudiced by his defense counsel's failure to object.

Likewise, Allen cannot demonstrate ineffectiveness of his appellate counsel for failing to raise the claim that his trial counsel was ineffective for failing to object at trial. Attorneys are not required to raise every conceivable issue on appeal and it is "difficult" to demonstrate ineffective assistance by appellate counsel due to a failure to raise a particular issue. *See Robbins*, 528 U.S. at 288; *Jones v. Barnes*, 463 U.S. 745, 751–54 (1983). Instead, appellate counsel should select the most promising issues for review, and the presumption of effective assistance of counsel is only overcome when the ignored issues are clearly stronger than the issues presented on appeal. *Robbins*, 528 U.S. at 288. Here, Allen's appellate counsel raised several claims on direct appeal, including Allen's due process claim, which is based on the use of allegedly coerced statements. Given that the "ignored issue" here—the ineffective assistance of trial counsel due to the failure to object to the admission of coerced statements—relies on the underlying claim that appellate counsel *did* raise on

appeal, Allen faces a difficult challenge in demonstrating that the ignored issue was stronger than those presented on appeal.  Further, even if we ignore the presumption of effectiveness, Allen cannot demonstrate deficient performance or prejudice because the underlying claims are meritless.  *See Hoffner*, 622 F.3d at 509 ("Because we find none of the alleged underlying errors to be meritorious, trial counsel was not ineffective for failing to object.  Therefore, appellate counsel's failure to raise the ineffective assistance issue was not constitutionally deficient.").  Because Allen cannot demonstrate the necessary prejudice under *Strickland* resulting from his *trial* counsel's failure to object to the challenged testimony, he cannot demonstrate the necessary prejudice resulting from his *appellate* counsel's failure to raise a claim that trial counsel  was ineffective due to this same failure to object.  Therefore, Allen cannot demonstrate the ineffective assistance of appellate counsel necessary to serve as cause to excuse Allen's defaults.  As a result, we conclude that Allen has procedurally defaulted his constitutional claims and has failed to demonstrate the necessary cause and prejudice required to allow us to reach the merits of the claims.

IV.

For the foregoing reasons, we affirm the district court's denial of Allen's petition for writ of *habeas corpus*.